[Civil No. 4607. Filed July 6, 1943.]

[139 Pac. (2d) 446.]

INSPIRATION CONSOLIDATED COPPER COM-
PANY, a Corporation, Defendant-Employer,
Petitioner, v. EARL K. ROSEBERRY, Applicant,
and THE INDUSTRIAL COMMISSION OF
ARIZONA, Defendant-Insurance Carrier, Re-
spondents.

Mr. Edward W. Rice, for Petitioner.

Mr. H. S. McCluskey and Mr. Fred O. Wilson, for Respondent The Industrial Commission of Arizona.

Mr. Guy Anderson, for Respondent Earl K. Roseberry.

McALISTER, C. J.—Earl K. Roseberry filed a claim for compensation for an injury by accident arising out of his employment by the Inspiration Consolidated Copper Company, a corporation, and from an award by the Industrial Commission in his favor, the Inspiration Company has brought the matter here by *certiorari* for review.

The applicant, Earl K. Roseberry, had been employed by the Inspiration Company as a carpenter for 15 or 16 months and on or about the 12th day of September, 1942, he filed a claim for compensation for an injury by accident arising out of his employment alleged to have occurred on the 12th day of August, 1942, and a hearing was had on this claim on November 10, 1942. It appears that he was laying flooring in the acid plant in which there was a steel pipe about four feet in diameter and running parallel with the flooring and that it was only 12 or 15 inches above the floor. The applicant testified as follows:

"Q. What were you doing at the time of the injury? A. Working under a large steel pipe and it was between a foot and fifteen inches from the floor and I was in a strained position reaching when this occurred. The knee wrenched and with the weight twisted and locked.

"Q. That was your right knee? A. Yes sir.

"Q. Was your weight on the knee? A. Yes sir. The strain was on my knee.

"Q. What were you reaching for? A. Under the pipe to nail the board.

"Q. Just what occurred there, what feeling did you have? A. Just locked, and I started to fall to one side

before I could straighten up and it was a few minutes before I could rise and stand on my other foot and when I did I nearly passed out. I couldn't hardly get my breath for a few minutes."

Richard Davies states in an affidavit dated September 15, 1942, that

"On August 12th, 1942 I Richard Davies did see Earl K. Roseberry injured while working for the Inspiration Consolidated Copper Co. Mr. Roseberry was on his right knee nailing flooring, his knee rolled and when he arose I could see he was in agony. He was unable to continue working."

And on September 24, 1942, he stated in another affidavit:

" . . . On the 12th of August, 1942, after lunch about 2:30 P. M., I was working about ten to twelve feet from Mr. Roseberry, I saw him reach for a board, he was on his right knee with the left knee up. He did not get the board, and as he turned on his right knee I noticed the expression of his face change and he turned pale, and I asked him what was the matter, and he said he had hurt his knee."

He went to Doctor Noice that evening for treatment. The doctor looked at the knee a minute and went into the other room and brought Dr. Kelly in and he turned to Dr. Noice and said "the cartilage is injured, and he said all we can do is x-ray it". Dr. Kelly gave him a note to take to the Inspiration Hospital the following day, though he told him next morning they could not x-ray him that day, but let him have a pair of crutches which he used for four weeks though he did not go to work for two months, or until October 12th, at which time he took a position with the Jennings Lumber Company at Safford.

Dr. Ira Eugene Harris, chief surgeon of the Inspiration Hospital first saw him on the 15th of August and a number of times afterwards and said "He had a slight

swelling around the lower edge of the patella and his knee was extremely tender over the upper medial of the border of the tibia."

"Q. You are unable to state, or are you, whether able to state at this time what, if anything, could be done or should be done with the knee. A. Well, if he has a cartilage that is out, that has been torn and slipped, after the period of observation that has been given, if he has a slipping cartilage then he should have that removed, but it is always desirable to give those patients a trial at symptomatic treatment and forty to forty five percent of those will heal."

This hearing was concluded on November 10th, but resumed on the 27th of November, 1942. In the meantime the applicant had filed an amended claim fixing the 17th of July, 1942, as the date of the accident, but at the beginning of the hearing he asked that he be permitted to change the 17th to the 25th day of July 1942, as the date. It appears that on that day he was working on a very steep hillside, at an angle of approximately 30 degrees, the hillside being littered with stones, loose dirt and boards and while he and three other men were carrying a form for a concrete foundation up the hillside, he stepped on a rolling rock, slipped and sprained his right knee. He was on the lower side of the form and could not see where he was stepping. This testimony was corroborated by Roy G. Newton, one of the four men who carried the form and who testified that Roseberry said when hurt "damn, that hurt" and went down on his knees and "we all set the form down". But the other two men did not corroborate him in this occurrence though Clive Wiltbank, one of the four, said he might have used the language Newton attributed to him, but he didn't hear it. His knee pained him so that on July 29th he went to see the company doctor who, after examining it, thought it a slight sprain of the ligaments of the right knee and placed on

it an Ace bandage. He called to see the doctor every day or two following the 29th, but continued to work and wear the bandage and while the knee was painful it improved until the occurrence of August 12, 1942.

At the hearing on November 10, 1942, he had testified that when he registered at the dispensary receptionist's desk on July 29th, he said nothing to her about an injury or accident, nor did he give such a history to Dr. Noice when examined by him on that date. He told the doctor that his knee had bothered him some two weeks prior to July 29, 1942; it had not, however, prior to July. His testimony was that working on the steep hillside had weakened his knee though he did state at the hearing on November 10th that he slipped on the side of the hill two days before July 29th. He said also that he did not have a fall prior to that time. The doctor, it seems, thought it a slight sprain of the ligaments of the right knee, but when it did not heal as rapidly as he thought it should he felt it must have been arthritis or something of that kind though he declined to say that it was arthritis.

On January 13, 1943, the Industrial Commission found that the applicant sustained an injury by accident arising out of and in the course of his employment on July 25, 1942, which injury caused temporary disability from August 13, 1942, to October 1, 1942, inclusive, entitling said applicant to compensation therefor. It also found that the applicant's condition had not yet reached a condition of permanency and that the case should be held open until his condition had become stationary. An award of $262.67 was made to the applicant, payable forthwith.

Notice of the award was sent to Mr. Smith, the claim agent of the Inspiration Consolidated Copper Company, and he handed it to Mr. Rice, the attorney for the company, who on January 21, 1943, wrote the commission concerning the award and asked:

"Will you kindly furnish me, as such attorney, a copy of the record of the Commission's proceedings at its session in which this decision was rendered, so far as it deals with this decision, as kept by the Commission in accordance with Section 56–904 of the Arizona Code Annotated 1939."

To which the claims manager, Kent B. Pomeroy, replied as follows:

"I may state that the Industrial Commission followed no formal procedure. The record was examined and transcript read by the several Commissioners and discussion of the case was had by the Commissioners over a period of several days. The Commissioners consulted with the attorneys of the commission concerning the record and the transcript and concluded that the claim was compensable, and the decision upon hearing was prepared, formally adopted and signed by the Commission, and copies mailed to the applicant and the employer."

Thereupon the Inspiration Consolidated Copper Company filed a motion for a rehearing upon the grounds: (1) That the decision and award is unlawful and void because the commission failed to proceed in the manner required by law in that the proceedings of the commission are not shown upon its records and no vote of the members thereon was had by calling each member's name by the secretary, that each member's vote was not recorded as cast; and (2) because it is not sustained by the evidence but is contrary thereto in that the undisputed evidence shows that the claimant was suffering from disease or disability of his knee before the alleged injury of July 25, 1942, that no injury to his knee was suffered by accident on said date, and that his disability, if any, was not caused by injury.

On February 4, 1943, the commission denied the motion for rehearing and the Inspiration Company thereafter brought the matter here for review.

■■ The method followed by the commission in making its award as indicated by the letter of its claims manager, Kent B. Pomeroy, shows that it did not follow any formal procedure. The transcript of the evidence was examined and read by the several commissioners, discussion of the case had by them over a period of several days, and from this they reached the conclusion that the claim was compensable and the decision was then prepared, formally adopted and signed by them. Whether the commissioners' names were each called by the secretary and their vote recorded as cast does not appear from this letter; however, section 56–904, Arizona Code 1939, provides that: "All proceedings of the commission shall be shown on its records, which shall be a public record, and all voting shall be had by calling each member's name by the secretary, and each member's vote shall be recorded as cast." This is a technical requirement that should be observed but it is not jurisdictional. The important consideration is that they read the transcript of the evidence, discussed it among themselves, came to a conclusion in the matter and signed the award. This was done and we are unable to see how or wherein it could have made any difference whatever to the parties that the commissioners made known their conclusion by signing the award rather than by casting their vote in its favor in response to the call of their names by the secretary. We think the matter is covered by section 56–913, Arizona Code 1939, which reads as follows:

"*Order not void for technical omission.*—A substantial compliance with the requirements of this article shall be sufficient to give effect to the orders of the commission, and they shall not be declared inoperative, illegal, or void for an omission of a technical nature."

■■ The testimony as to the occurrence of July 25, 1942, was in conflict. The witness Newton corroborated the claimant but the other two witnesses who

carried the form did not remember the incident though Wiltbank said claimant may have used the language attributed to him by Newton, but that he did not hear it. The doctor to whom he went on July 29th thought the ligaments of the knee had been slightly sprained and placed on it an Ace bandage. He continued to work until August 12th, when he accidently hurt the same knee in the manner pointed out by him and Davies, so that he was compelled to quit work altogether for several weeks. Upon this conflicting testimony, the commission found that the claimant did injure himself, in an accident on July 25th, and we see no reason why it was not acting within its rights in doing so. It was the judge of the testimony and had to decide which witnesses to believe. It had as much right to accept the statement of the claimant and Newton, that the claimant had slipped on a rock and sprained his right knee, as it did to believe the statements of the other two men that they did not remember the accident.

The claimant had testified at the hearing on November 10th, that two days or thereabouts prior to July 29th, "it (knee) was lame and I slipped on the hillside," and at the hearing on November 27, 1942, he stated that on July 25th he stepped on a rolling rock, slipped and sprained his right knee. He had testified on November 10th, however, that he did not slip prior to July 29th, and that his knee had hurt some since two weeks before that date. It was the province of the commission, therefore, to decide whether claimant's statement on November 10th, or the somewhat stronger one on November 27th, corroborated by Newton, was to be accepted as true and followed. If it be true that his knee had not been troubling him prior to the 25th, he was entitled to compensation for his injury after the commission concluded the accident produced it, and if he had been suffering from arthritis of the knee for a week or ten days prior to the accident of July 25th, it

would merely constitute an aggravation of an existing condition and entitle him to compensation just the same, and the incident of August 12th would still further aggravate the condition of the knee.

 The provisions of the compensation act should be liberally construed to accomplish their purpose and as we stated in *Ossic* v. *Verde Central Mines,* 46 Ariz. 176, 49 Pac. (2d) 396, 401:

" . . . With this rule of construction we also agree. While we may not violate the clear language of the act, merely because in our opinion we think some other provision would have been wiser, yet where there is any reasonable doubt as to the construction to be given it, either in part or in whole, that construction should be adopted which will best effect the purpose of seeing that the injured workman is reasonably compensated for the loss of his earning power caused by the injuries which he has sustained through a compensable accident."

The award is affirmed.