81 N.J. Super. 461 (1963)
196 A.2d 7
BOARD OF TRUSTEES OF THE TEACHERS' PENSION AND ANNUITY FUND OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ALEX A. LA TRONICA, HOWARD B. BRUNNER AND PAUL D. O'CONNOR, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1963.
Decided December 16, 1963.
*462 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Thomas C. McGrath, Jr., Law Assistant, argued the cause for appellant (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. Cassel R. Ruhlman, Jr. argued the cause for respondents.
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal from a decision of the State Board of Education affirming a decision of the Commissioner of Education in three consolidated cases. The Commissioner reversed a decision of the Board of Trustees of the Teachers' Pension and Annuity Fund, which awarded to three teachers smaller retirement allowances than they believed they were entitled to under N.J.S.A. 18:13-112.73. Both the Commissioner and the State Board of Education held that the Board of Trustees had no statutory authority to *463 interfere with salary determinations made by the local boards of education.
The Board of Trustees here contends that neither the Commissioner nor the State Board of Education has jurisdiction to review rulings of the Board of Trustees; that the appeal from its decision should have been taken directly to the Appellate Division, and that the Board of Trustees may refuse to award retirement allowances based upon extra compensation paid to a teacher during his final year of employment preceding retirement.
The teachers, Alex A. LaTronica, Harold B. Brunner, and Paul D. O'Connor, are veterans and members of the Teachers' Pension and Annuity Fund. Each has retired from employment with a local board of education and has thereby become eligible for a retirement allowance of "1/2 of the compensation received during the last year of employment upon which contributions to the annuity savings fund or contingent reserve fund are made." N.J.S.A. 18:13-112.73. "Compensation" is defined as "the contractual salary for services as a teacher as defined in this act." N.J.S.A. 18:13-112.4(d).
The facts pertinent to each teacher are as follows:
Alex A. LaTronica  Each spring, from at least 1954 through 1957, LaTronica's salary, including an annual increment, was approved by the Lyndhurst Board of Education at the same time that the salaries of many other teachers were established. On July 24, 1957 he was engaged as High School Dean for the school year 1957-58 at a salary of $6,300. In the spring of 1958 he was re-engaged for the 1958-59 school year along with 132 tenure employees, his salary being increased to $6,700. However, on November 19, 1958 the local school board's finance committee voted to increase his salary to $7,950, retroactive to September 1, 1958. LaTronica retired on July 1, 1959 and claimed a retirement allowance of $3,975, or 1/2 of $7,950. He was awarded $3,350, or 1/2 of $6,700, by the Board of Trustees.
Harold B. Brunner  Mr. Brunner's salary for the school year 1958-59 was $13,530. Thereafter, in a letter to the Secretary *464 of the Board of Trustees of the Teachers' Pension and Annuity Fund dated April 2, 1959, which is included in the record on file with the Appellate Division, Brunner stated that it "now looks as though my salary for the new school year will be fixed at $14,900." He then proposed a plan whereby the school board would pay this salary of $14,900 at the rate of $1,693.33 per month from July to December of 1959 and $790 per month from January to June of 1960. His purpose in suggesting this kind of salary arrangement was "to avoid the social security cut-off" by earning less than $4,800 in 1960 before his contemplated retirement on June 30, 1960 at the end of the school year. The Board of Trustees considered Brunner's suggested plan but concluded that "any program to accelerate or change the method of salary payment in the final year of service is an evasion of basic pension principles and would be considered an attempt to circumvent the statutes." On June 18, 1959 the Scotch Plains Board of Education voted to fix his salary for the nine-month period from July 1, 1959 to March 31, 1960 at $14,250, the motion reciting that "The dates were fixed at the request of Mr. Brunner who will retire as of March 31, 1960." Brunner retired on April 1, 1960 and claimed a retirement allowance of $8,816, or 1/2 of a final year's salary of $17,632 ($3,382 from April 1 to June 30, 1959 plus $14,250 from July 1, 1959 to March 31, 1960). The Board of Trustees awarded him $7,000.56 based on a final year's compensation of $14,070 (3/12 of $13,530 ($3,382.50) plus 9/12 of $14,250 ($10,687.50)). The Board of Trustees determined that the salary of $14,250 fixed on June 18, 1959 was an annual salary, so that over the nine-month period ending March 31, 1960 Brunner could only be credited with 9/12 of that amount as "compensation" within the meaning of the statute.
Paul D. O'Connor  Each April, from at least 1957 through 1959, the Allendale Board of Education set his salary for the following school year, along with that of other school board employees. In 1958-59 he received $9,500. For the 1959-60 school year his salary was set at $10,500. On September 8, *465 1959 O'Connor announced his plan to retire, effective April 1, 1960, whereupon the local board of education voted to "reissue a new contract" with a salary of $10,500 for the period July 1, 1959 through March 31, 1960. O'Connor claimed a retirement allowance based upon a final year's compensation of $12,875 ($2,375 from April 1 to June 30, 1959 plus $10,500 from July 1, 1959 to March 31, 1960). The Board of Trustees awarded him a retirement allowance of $5,125 or 1/2 of a final year's compensation of $10,250 (3/12 of his 1958-59 salary of $9,500 ($2,375) plus 9/12 of his 1959-60 salary of $10,500 ($7,875)). The approach of the Board of Trustees in O'Connor's case was similar to its treatment of Brunner.
The Board of Trustees has declared as its established policy that certain payments shall not be recognized as compensation for pension coverage. These include inter alia: (a) a retroactive salary adjustment or an inter-school year pay adjustment made in a member's final year of service, unless such adjustment was made as a result of an across-the-board pay adjustment program for all personnel in the school district; (b) individual pay adjustment made within or at the conclusion of a member's final year of service; (c) increment granted for retirement credit; and (d) increment granted in final year of service in recognition of member's service.
The reason for this policy may be stated in the words of the Secretary of the Teachers' Pension and Annuity Fund:
"At a regular meeting conducted on April 9, 1959, the Board of Trustees ruled that any program to accelerate, adjust, or change the method of salary payment in an employee's final year of service was an evasion of basic pension principles and would be considered an attempt to circumvent the statutes. The Board observed that the statutes vest it (the Board) with the responsibility for the general administration and the proper operation of the Fund, therefore the Board has the right to rule on or define creditable compensation in the interest of safeguarding the actuarial soundness of the Fund and the preservation of the rights, privileges, and benefits of the membership of the Fund. The Board also bears the responsibility for the proper determination and certification of the employer's annual contribution to the Fund, payment of which is assumed by the State of *466 New Jersey. The State, by law, in addition to appropriating the employer's normal annual contribution each year, must also appropriate sufficient monies to cover any deficits in the Fund's reserves. Deficits do arise in the Fund's reserves where abnormal salary adjustments are made just prior to or at the time a member qualifies for benefit, since the actuarial salary projections for contributions do not make allowance for such abnormal salary adjustment. Discriminatory recognition of abnormal salary adjustments would constitute a raid on the Fund's reserves."
Respondents contend that the Board of Trustees, as an administrative agency, cannot establish their own such policy because it would deviate from the principle and policy of the statute as enacted by the Legislature. The Board of Trustees argues that its statutory responsibility for administering the Fund requires it to define creditable compensation in the interest of safeguarding the actuarial soundness of the Fund.

I.
Review of the final decision of a state administrative agency is by appeal to the Appellate Division. R.R. 4:88-8. This court is asked to decide whether a decision of the Board of Trustees is so appealable, or whether the proper procedure is to channel it through the Commissioner of Education and State Board of Education before reaching the Appellate Division, as was done in the present case. An appeal to the Commissioner and the State Board must be based upon R.S. 18:3-14, which reads:
"The commissioner shall decide without cost to the parties all controversies and disputes arising under the school laws, or under the rules and regulations of the state board or of the commissioner." (Emphasis added)
The present controversy quite obviously does not arise under "the rules and regulations" of the State Board or of the Commissioner. We are also satisfied that it does not arise under "the school laws."
The Board of Trustees of the Teachers' Pension and Annuity Fund is now an administrative agency within the Department *467 of the Treasury, having been transferred there pursuant to L. 1955, c. 70, § 2; N.J.S.A. 52:18A-96. Said statute provides, inter alia:
"[T]he Board of Trustees of the Teachers' Pension and Annuity Fund, * * * and all of their respective present functions, powers, duties, equipment and records, * * * are hereby transferred to the Division of Pensions created and established hereunder in the Department of the Treasury."
The statement of purpose appended to L. 1955, c. 70, reads:
"The purpose of this legislation is to create in the Department of the Treasury, a Division of Pensions, to which will be transferred all of the existing State Pension Agencies."
Respondents contend that prior to the enactment of the 1955 act the courts considered pension matters to be part of the structure of the school laws, citing Board of Education of Borough of Beach Haven v. State Bd. of Education, 115 N.J.L. 364 (Sup. Ct. 1935), and Teachers' Pension and Annuity Fund v. Bd. of Education of Boonton Twp., 1939-49 School Law Decisions 3 (1945). These two cases are only tangentially related to the questions before us and are not authority for the position held by respondents. In Beach Haven the local board of education instituted retirement proceedings before the Trustees of the Teachers' Pension and Annuity Fund. The court held that the dispute between the teacher and the school board as to its obligations under her employment contract was within the cognizance of the Commissioner of Education, subject to appeal to the State Board of Education. In answer to a claim that the Commissioner lacked jurisdiction, the court stated that the appeal was taken from the action of the local board and not from the Trustees. The court's statement that the action of the Trustees was ministerial and that the Teachers' Pension and Annuity Fund was part of the school law was not necessary to its decision. Moreover, the court could not have decided that the Commissioner was authorized to hear appeals from the determination *468 of a separate State agency, since the Board of Trustees was not yet such an agency.
Although included in the controversy before us is the legality of the salary increases given by local boards of education, it is the ruling of the Fund that is the crux of the situation. What the Department of Education, an administrative agency of the State, has attempted to do here is to pass on the validity of a ruling by the Board of Trustees, another duly constituted State agency  a procedure we deem not only contrary to statute and case law, but to our rules.
In Boonton, a matter decided at the Department of Education level some years before the 1955 act, the Fund petitioned the Commissioner to require a local school board to dismiss a janitor who had been certified for retirement but continued to work. The fact that the Fund found it necessary to invoke the powers of the Commissioner to deal with a local board in no way indicates that the Commissioner has the power of review over the action of the Board of Trustees of the Fund. Of course, under R.S. 18:3-14, the Commissioner had and still possesses the power to review the actions of local boards of education. In re Masiello, 25 N.J. 590, 604 (1958).
The creation of a Division of Pensions consolidated all existing state pension agencies in the Department of the Treasury. The nature of pension decisions requires a particular expertise of its own, distinct from the expertise and background of the Commissioner of Education and the State Board.
In 1955 the Legislature also enacted the Teachers' Pension and Annuity Fund-Social Security Integration Act, L. 1955, c. 37, thereby repealing R.S. 18:13-24 through 110. Under section 56 of chapter 37 (N.J.S.A. 18:13-112.58) the following provision was made:
"Subject to the provisions of chapter 70 of the laws of 1955, the general administration and responsibility for the proper operation of the * * * Fund and for making effective the provisions of this act shall be vested in the board of trustees. Subject to the limitations *469 of the law, the board shall, from time to time, establish rules and regulations for the administration and transaction of its business and for the control of the funds created by this act * * *."
Further, under section 58 of chapter 37 (N.J.S.A 18:13-112.60) the board was charged with the following responsibilities:
"* * * Upon the basis of such investigation and valuation [by the actuary] the board shall:
(a) Adopt for the retirement system such mortality, service and other tables as shall be deemed necessary;
(b) Certify the rates of deduction from compensation computed to be necessary to pay the annuities authorized under the provisions of this act; and
(c) Certify the rates of contribution, expressed as a proportion of the compensation of members, which shall be made by the State to the contingent reserve fund."
The Board of Trustees is charged with the full responsibility for the workings of the Fund. While the act of 1955 was incorporated into Title 18, Education, there is no reference in the act itself to a review of the Board's rulings by the Commissioner. In fact, the only provision for review contained in the prior statute, R.S. 18:13-58, which had provided for an appeal to the State Board from the decision of the Board of Trustees in disability retirement applications, was not re-enacted. It will be further noted that the provisions relating to the Board of Trustees found under Title 18 are expressly made subject to chapter 70 of the Laws of 1955. See N.J.S.A. 18:13-112.58.
It is clear that since the enactment of L. 1955, c. 70 (N.J.S.A. 52:18A-95 et seq.), the Board of Trustees is an administrative agency within the Department of the Treasury and a review of its decisions lies with the Appellate Division pursuant to R.R. 4:88-8. The appeal from the decision of the Board of Trustees in the instant case was improperly taken to the Commissioner of Education and to the State Board which no longer has jurisdiction in pension matters.

*470 II.
The fact that the appeals were improperly taken to the Commissioner and State Board will not preclude full consideration here of the merits of the case.
Respondents contend that "compensation" as used and defined in the Teachers' Pension and Annuity Fund Act leaves no room for discretionary action by the Board of Trustees in determining the amount of that compensation. It should be clear at the outset that the Board of Trustees does not seek to determine how much pay is to be received by the teachers, but only to what extent that pay shall be the basis for computing the extent of retirement allowances.
The Board of Trustees is required to make rules and regulations for the administration and transaction of its business and for the control of funds, subject to the limitations of law. See N.J.S.A. 18:13-112.58, quoted above.
Respondents cite Abelson's, Inc. v. New Jersey State Board of Optometrists, 5 N.J. 412 (1950), for the statement therein made that the rules and regulations and administrative action of an agency cannot subvert or enlarge upon statutory policy, rules or regulations, and that administrative implementation cannot deviate from the principle and policy of the statute. The rules and regulations of the Board of Trustees as embodied in their statement of policy are consistent with the letter and spirit of the Abelson's statement.
A pension fund is based upon actuarial principles incorporating known or reasonably anticipated statistics with regard to life expectancies and present and future payments into and out of the fund, to the end that all the members may be served without jeopardizing the financial soundness of the fund. In consideration of the other contributing members of the fund, the benefits of a few cannot be enhanced by ad hoc salary increases intended to increase retirement allowances without adequate compensation to the fund. Clearly the actions of the local boards and the subsequent demands of the respondents have a something-for-nothing color to them which *471 should be deplored. The local boards could, if the action taken by them in this case were approved, defer adequate compensation to its teachers until their final year, then catapult the teacher to a high level of compensation, and cause the Pension Fund to compensate for the local board's failure to grant increases in the past. This would permit the local board a grand gesture of farewell at little expense; it also would draw heavily on the Pension Fund without having provided sufficient compensation in prior years. The Pension Fund does include provisions for accommodating regular increases in salary, and undoubtedly in actuarial terms these increases have been anticipated and accounted for in establishing the Fund and its rates of contribution and award. But increases of the type under consideration in this case cannot be anticipated, and are rightly excluded by the terms of the Board of Trustees' established policy.
Local boards should not be allowed to make up for an earlier failure to grant increases through generosity with the Pension Fund's money. Such a use of the Fund requires a revision of its purpose and structure which would better be left to the Legislature.
The case of Casale v. Pension Com., etc., of Newark, 78 N.J. Super. 38 (Law Div. 1963), holding that the pension of a municipal employee must be based on his salary at retirement, and not on a retroactive salary increase made after his retirement, deals with a question similar to the one in the present case, with a similar conclusion.
The decision of the State Board of Education is reversed, and the decision of the Board of Trustees is approved and adopted.