443 P.2d 502

**BOARD OF EDUCATION OF the VILLAGE OF JEMEZ SPRINGS, New Mexico, Appellant,**

**v.**

**STATE BOARD OF EDUCATION and Josephine Shepard, Appellees.**

**No. 93.**

Court of Appeals of New Mexico.
June 7, 1968.

Rehearing Denied June 21, 1968.

Charles S. Solomon, Santa Fe, for appellant.

E. P. Ripley, Gen. Counsel, Dept. of Education, Santa Fe, Avelino Gutierrez, Albuquerque, for appellee.

## OPINION

WOOD, Judge.

The Local Board (Board of Education of the Village of Jemez Springs) appeals directly to this court from the decision of the State Board (State Board of Education). The dispute is over the age of the teacher (Josephine Shepard). The issues are: (1) Jurisdiction of this court; (2) Jurisdiction of the State Board; (3) Whether the Local Board could involuntarily retire the teacher at age sixty; (4) Whether the State Board made its decision at a public meeting and (5) Whether the State Board's review was proper.

*Jurisdiction of this Court*

The Local Board applied for involuntary retirement of the teacher in the spring of 1967. At that time the statute authorizing direct appeals to this court was not in effect.

Section 77–8–17, N.M.S.A.1953 (Repl. 1968) became effective July 1, 1967. N.M. Laws 1967, ch. 16, § 303. Subsequent to this effective date the Local Board, pursuant to directive of the State Board, conducted a hearing on the question of the teacher's age. The teacher appealed the Local Board's decision to the State Board. The State Board conducted its hearing in September 1967 and reversed the Local Board.

The fact that the Local Board sought to retire the teacher prior to the effective date of the statute authorizing direct appeal to this court does not determine our jurisdiction. Section 77–8–17, supra, authorizes direct appeals from decisions of the State Board "after a review proceeding pursuant to this section." The State Board's review was pursuant to § 77–8–17, supra; we have authority to review that decision on a direct appeal. See Riddle v. Board of Education, 78 N.M. 631, 435 P.2d 1013 (Ct.App.1967).

*Jurisdiction of the State Board*

The Local Board contends that the State Board has no jurisdiction "to hear a matter concerning involuntary retirement." It bases this contention on the provisions of the Educational Retirement Act (old law— § 73–12–34 to 73–12–91, N.M.S.A. 1953, Supp.1965; new law—§ 77–9–1 to 77–9–45, N.M.S.A.1953, Repl.1968).

The Local Board asserts that the Educational Retirement Board accepted the Local Board's determination of the teacher's

age and notified the teacher that "she was terminated." It contends that the State Board's decision was a review of the action of the Educational Retirement Board and that the State Board had no authority to do so.

■ This claim does not accord with the facts. The record does not show any action by the Educational Retirement Board either in connection with the teacher's age, in connection with termination of the teacher's employment, or in approving retirement benefits under the Local Board's application. Nor does the record show the State Board undertook to review any action or position taken by the Educational Retirement Board.

■ The Local Board also asserts that the Educational Retirement Board is the agency to determine whether the teacher had attained the age of involuntary retirement; that the State Board has no authority to make such a determination.

We express no opinion concerning the authority of the Educational Retirement Board in connection with matters arising under the Educational Retirement Act. See Board of Trustees of Teachers' Pension Etc. v. La Tronica, 81 N.J.Super. 461, 196 A.2d 7 (1963). Our concern here is not with the provisions pertaining to retirement but with the provisions pertaining to employment of a teacher by the Local Board.

In applying for the teacher's involuntary retirement, the Local Board stated that the teacher's employment would terminate.

The teacher had tenure. Our statutes establish procedures for terminating the employment of tenure teachers. Old law— § 73–12–13, N.M.S.A.1953, Supp.1965; new law—§ 77–8–12, N.M.S.A.1953 (Repl.1968). If these procedures are not followed, the teacher is protected in her employment. Old law—§ 73–12–13, supra; new law— § 77–8–9, N.M.S.A.1953 (Repl.1968). If the teacher is of a specified age she does not have this protection (old law—§ 73–12– 13, N.M.S.A.1953, Supp.1965; new law— § 77–8–13, N.M.S.A.1953, Repl.1968); if

she has not reached the specified age, she has the statutory protection.

In this case, the question of the teacher's age was determinative of her employment protection. The local Board determined the age of the teacher; the State Board reviewed that decision. The effect of the State Board's review is to determine that the teacher was entitled to an employment contract for the ensuing school year. It had authority to conduct such a review. Old law—§ 73–12–13, supra; new law—§ 77–8–17, supra. The State Board had jurisdiction to review the Local Board's determination of the teacher's age.

*Whether the Local Board Could Involuntarily Retire the Teacher at Age 60*

Under the Educational Retirement Act enacted by N.M. Laws 1957, ch. 197, the Local Board could apply for the involuntary retirement of a teacher who had attained the age of sixty. Section 73–12– 68, N.M.S.A.1953 (Supp.1965). The Local Board contends that under this provision it could involuntarily retire the teacher because there is no question that she was aged sixty.

The old tenure statute was amended in 1963. (Section 73–12–13(G) (3), N.M.S.A. 1953, Supp.1965). A new tenure statute was enacted in 1967. (Section 77–8–13, N.M.S.A.1953, Repl.1968). Under these statutes a tenure teacher may not be involuntarily retired for age before reaching the age of sixty-two. Under the Educational Retirement Act enacted in 1967, the Local Board may apply for the involuntary retirement of a tenure teacher who has attained the age of sixty-two. (Section 77–9–27, N.M.S.A.1953, Repl.1968). The Local Board contends that neither the tenure statutes nor the new retirement statute apply.

■ We decline to decide this question because it is a change in the theory followed by the Local Board both at the hearing before the Local Board and before the State Board. At the Local Board hearing it was stated: "In this case there is no question—if she is under sixty-two she has

tenure rights and she has the right to work; * * *" Before the State Board, the Local Board stated: "We will admit she had tenure until she was 62 * * *"

A party will not be permitted to change his theory of the case on appeal. Pfleiderer v. City of Albuquerque, 75 N.M. 154, 402 P.2d 44 (1965). A party will not be permitted to change position from that adopted below in connection with any matter or claim. Maryland Casualty Co. v. Foster, 76 N.M. 310, 414 P.2d 672 (1966).

Robert S. Abbott Pub. Co. v. Annunzio, 414 Ill. 559, 112 N.E.2d 101 (1953) states:

"* * * The same principle * * * applies on review by courts of administrative determinations so as to preclude from consideration questions or issues which were not raised in the administrative proceedings. * * *"

There appear to be certain exceptions to the application of this rule in connection with court review of administrative proceedings. See United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). Those exceptions are not applicable here.

*Whether the State Board Made its Decision at a Public Meeting*

The Local Board contends that the decision of the State Board is invalid because reached contrary to § 5-6-17, N.M. S.A.1953. Under this section, the State Board is required to "* * * make all final decisions at meetings open to the public * * *" Raton Public Service Co. v. Hobbes, 76 N.M. 535, 417 P.2d 32 (1966) referred to the purpose of this statute:

"* * * The purpose was to provide that governing bodies dealing with public funds be required to make decisions in the open where the interested public could observe the action. * * *"

Five members of the State Board voted to reverse the decision of the Local Board; three voted to affirm. The Local Board does not claim that this decision was reached at a meeting which excluded any person desiring to attend.

What the Local Board attacks is the manner in which the members voted. They voted by secret ballot. The Local Board claims that this manner of voting violates § 5-6-17; that the requirements of this section are not met unless the vote of each member is publicly announced or recorded.

Blum v. Board of Zoning and Appeals, 1 Misc.2d 668, 149 N.Y.S.2d 5 (Sup.Ct. 1956) states that for the Zoning Board's action to be effective, it must have been taken at "* * * a meeting open to the public at which each board member voting openly announces his vote at the time he gives it for recording by the clerk of the board." This result however was based on N.Y. Town Law, McKinney's Consol. Laws, c. 62, § 267, Subd. 1 (Consol.Law Serv. 1963) which required the zoning board to keep minutes "* * * showing the vote of each member upon every question * * *." See Inspiration Consol. Copper Co. v. Roseberry, 60 Ariz. 435, 139 P.2d 446 (1943); Torello v. Board of Zoning Appeals, 127 Conn. 307, 16 A.2d 591 (1940).

Section 5-6-17, supra, requires that final decisions be reached at meetings open to the public; it does not prescribe the means by which the decision is reached at that open meeting. To hold that members were required to announce their vote publicly would be to add a requirement not stated in the statute. This we decline to do. If there is to be such a requirement, here, as in the jurisdictions cited above, it should be imposed by legislation. The secret ballot of the members of the State Board, taken at an open meeting, did not violate § 5-6-17, supra.

*Whether the State Board's Review was Proper*

The issue before the Local Board was the teacher's age. She claimed she was born on July 4, 1906. The Local Board found "* * * that the most trustworthy evidence indicates that the birth date of Josephine Shepard was July 3, 1904, * *"

The State Board reversed the Local Board on the basis that " * * * the evidence in the transcript does not substantiate the finding of the Jemez Board * * *."

The State Board's decision is pursuant to the portion of § 77-8-17, supra, which states:

"D * * * The state board shall also determine whether or not there is evidence in the transcript to substantiate the findings of the local school board * * *."

Although the State Board's decision follows the statutory language, the Local Board contends that the State Board did not determine whether there was substantial evidence to support the Local Board's finding. It asserts that the State Board weighed the evidence and made a contrary decision.

Is there substantial evidence to support the finding of the Local Board? The teacher is a child of Moses and Edna Abouselman. The Local Board claims the baptismal certificates of the Abouselman children are substantial evidence of the teacher's age.

There is a certificate showing that a child with the baptismal name of Sarah Josephine was born on July 3, 1904 and baptized on July 17, 1904. Under § 20-2-10, N.M.S.A.1953, this record is " * * * prima facie evidence of such facts so shown thereby * * *." While the certificate is evidence of the "facts so shown," the certificate in itself, does not show that the teacher is the child named in the certificate.

Nor does this certificate, standing alone, permit the inference that the teacher is the child named in the certificate; additional facts are required before such an inference may be drawn. For example: If there were evidence that the teacher was the sole Abouselman child, then from this evidence and the certificate, one could infer that the teacher was born on the date stated in the certificate.

Here there were several children. The Local Board introduced the baptismal certificates of eight children showing births in 1895, 1897, 1899, 1904, 1908, 1911, 1916 and 1918. With the exception of the 1904 certificate, the children named in the other certificates are accounted for. Thus, the Local Board would draw the inference that the teacher was the child born in 1904.

However, the undisputed testimony is that there were nine children. Seven match with the baptismal certificates. There remains the 1904 baptismal certificate, the child Rosemary, and the teacher. The teacher and an older sister testified that Rosemary was born May 17, 1904. Although the Local Board attacks evidence corroborating this birth date (a death certificate and a delayed birth certificate) this direct testimony that Rosemary was born in 1904 is uncontradicted. Obviously, the fact of Rosemary's birth in 1904 is not a fact which together with the 1904 certificate will sustain an inference of the teacher's birth in July 1904.

There is the similarity of names. The 1904 certificate has the name Sarah Josephine. The evidence is that the teacher's name is Josephine Antoinette. Is this name similarity evidence of such substance that it will support a reasonable inference that the teacher is the child of the 1904 certificate? See Tapia v. Panhandle Steel Erectors Co., 78 N.M. 86, 428 P.2d 625 (1967).

▮ The evidence is uncontradicted that the child baptized in 1895 as Sara has the name, Sara Josephine; that the teacher has never been known by the name Sarah; that the teacher is known as Josephine Antoinette and was so named. Generally, uncontradicted testimony cannot be disregarded by the trier of the facts unless there are facts or circumstances which impair the accuracy of the testimony. Beacon Supply Co. v. American Fiber Corp., 75 N.M. 29, 399 P.2d 927 (1965); Waters v. Blocksom, 57 N.M. 368, 258 P.2d 1135 (1953). See Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940).

The only circumstance which might impair the accuracy of the above testimony is

that two of the children have the name "Josephine." This disappears as a possibly suspicious circumstance in the light of the fact that two other children had similar names—Mary Rose and Rosemary. The Local Board was not free to disregard this uncontradicted evidence. Medler v. Henry, supra; Compare Arretche v. Griego, 77 N.M. 364, 423 P.2d 407 (1967).

If the Local Board drew the inference that the teacher was the child named in the 1904 certificate on the basis of the similarity of name, the inference was unreasonable because of the uncontradicted testimony. The inference being unreasonable, it does not substantiate the finding of the Local Board.

The only other evidence placing the teacher's birth date in 1904 is the affidavit of Sophie Garcia. She states the teacher was born on July 4, 1904, recollecting that her brother, born on March 26, 1904, was only three months old when the teacher was born; that her father broke his leg at a horse race on July 4, 1904; that her grandmother was sent for to give first aid; that the grandmother was unable to come because of helping at the birth of the teacher.

We disregard the difference between the claimed July 3rd and July 4th birth dates. This affidavit is not evidence having a rational probative force because (a) it is based on affiant's recollection of events alleged to have happened when she was eight years old (she is now seventy-one) and (b) it omits Rosemary as one of the Abouselman children, yet Rosemary's existence is not disputed. "Certainly orders of administrative agencies cannot be justified without a basis in evidence having rational probative force." McWood Corporation v. State Corporation Commission, 78 N.M. 319, 431 P.2d 52 (1967).

 The issue is whether there was evidence to substantiate the finding that the teacher was born on July 3, 1904. Accordingly, we have not been concerned with, and do not review, the evidence indicating a birth date of July 4, 1906. Our conclusion is that the Local Board's finding is not supported by substantial evidence. Since this conclusion is dispositive, there is no need to consider the questions raised concerning evidence introduced at the State Board hearing. See § 77-8-17, supra.

Although our conclusion is that the Local Board's finding was not supported by substantial evidence, our decision is not based on the evidence question because of the nature of the review in this court.

 Our review is not a review of the Local Board's decision; rather it is a review of the State Board's decision reviewing the Local Board's decision. Our review of the State Board's action is limited to determining whether the State Board acted arbitrarily, unlawfully, unreasonably or capriciously. McCormick v. Board of Education, 58 N.M. 648, 274 P.2d 299 (1954).

We paraphrase McCormick. If we had for decision the question of whether the State Board correctly ruled the Local Board's action was not substantiated by evidence in the transcript, we would conclude that the State Board was right in its decision. In reality, the proper question is whether the conclusion of the State Board in reaching its decision was unlawful or unreasonable. Since we would reach the first conclusion concerning the Local Board's action, our conclusion that the State Board did not act unlawfully or unreasonably follows as a matter of course.

The decision of the State Board is affirmed.

It is so ordered.

SPIESS, C. J., and ARMIJO, J., concur.