**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2480-22

MICHAEL LENZ,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued May 20, 2024 – Decided July 11, 2024

Before Judges Marczyk and Vinci.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx6207.

David B. Rubin argued the cause for appellant (David B. Rubin, PC, attorneys; David B. Rubin, on the briefs).

Jeffrey Padgett, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sara M. Gregory, Assistant Attorney General, of counsel; Jeffrey Padgett, on the brief).

PER CURIAM

Petitioner Michael Lenz appeals from the final administrative decision of the Board of Trustees ("Board"), Public Employees' Retirement System ("PERS"), rejecting an administrative law judge's ("ALJ") decision that Lenz's retroactive salary increase be included as creditable compensation for pension calculation purposes. Based on our review of the record and the applicable legal principles, we affirm.

I.

On February 1, 2008, Lenz was enrolled in PERS through his employment with Hudson County Department of Roads and Property ("County"). Lenz was promoted to the position of manager of public property in 2012. After receiving the promotion, Lenz submitted a budget request for an annual salary of five percent above the salary of his highest paid subordinate. This was based on the County's purported unwritten policy "with respect to a five-percent differential between the salaries of particular supervisors and their next ranking subordinate." The County denied Lenz's request. Accordingly, in June 2015, Lenz sued the County in the Law Division for violation of the policy. The complaint was subsequently removed to federal court. He claimed he served in a supervisory capacity "at all times," even prior to being promoted in 2012.

A-2480-22

At some point prior to Lenz filing the lawsuit, he developed Parkinson's disease. Thereafter, he applied for ordinary disability retirement benefits. Lenz was subsequently granted ordinary disability retirement benefits and retired effective March 1, 2018.[1]

On March 29, 2018, Lenz settled his litigation against the County for $100,000, a portion of which would include back pay for the additional gross salary he would have received in the years 2014-2017. The settlement included $78,163.47 in retroactive compensation that Lenz requested be considered creditable compensation for his final average salary for retirement purposes. The settlement provided:

1) $78,163.47 in "back pay" for the years 2014, 2015, 2016 and 2017 paid by Hudson County and $21,836.53 for "personal injury" paid by the Hudson County Insurance Fund Commission (the "IFC"); or

2) if the Division of Pension and Benefits (the "Division") does not accept the $78,163.47 amount as "back pay," then a $100,000 lump sum amount paid by the IFC.

Paragraph 2.1(a) of the settlement stated that Lenz would be paid:

---

[1] Lenz testified he has been retired since February 1, 2016. He asserts in his brief he retired sometime in 2017.

[A] sum equivalent to the additional gross salary that Lenz would have received in each of the years 2014, 2015, 2016 and 2017 as stipulated on the chart annexed hereto, which shall be designated as back pay and tendered to Lenz in a manner compliant with any Fact Sheets or standards of [the Division] applicable to payments of back pay in employment litigation settlements, with such payroll and pension-related deductions and contributions applicable to that additional gross income, which will make up the statutorily mandated employee contribution to the funding of the pension plan.

Paragraph 2.3 provided the County would "file with the Division all . . . certifications or statements necessary to effectuate the agreed-upon retroactive salary increases," which the County provided in a May 7, 2018 letter.

The Division rejected the settlement amount as not creditable compensation for pension purposes. The County subsequently wrote the Division attempting to clarify portions of its original letter, but the Division again rejected the County's explanation in September 2018.

Lenz then appealed to the Board. On February 4, 2019, the Board voted to deny the appeal. It found "[t]he retroactive salary increase . . . is . . . extra compensation that was made primarily in anticipation of retirement, contrary to N.J.A.C. 17:2-4.1, that is not creditable for pension-calculation purposes." The Board also granted Lenz's request to transmit the matter to Office of Administrative Law for a hearing.

4

Lenz moved for summary decision with the ALJ. On July 17, 2020, the ALJ issued an order granting partial summary decision, but ruled that a hearing was necessary as to whether Lenz's retroactive salary increase was "extra compensation" under N.J.A.C. 17:2-4.1(a)(11) and (12).

A hearing took place on March 4, 2021. The only witness called by Lenz was Michael Dermody, Esq., who represented Hudson County in the civil case. Dermody testified that supervisory personnel were paid salaries at least five percent more than their highest paid subordinate, and that increased amount was included in their base salary. He testified regarding deposition testimony from other individuals employed by the County who confirmed the five-percent policy, along with the County's answers to interrogatories, which acknowledged the existence of the policy. He further testified that Lenz received the same retroactive adjustment "any other similarly situated employee would have received had they brought it to the County's attention."

On January 27, 2023, the ALJ issued his initial decision reversing the Board's determination after finding the salary increases in the settlement agreement were credible compensation under N.J.A.C. 17:2-4.1(a)(11) and (12). He noted Dermody was a credible witness. The ALJ found the raises satisfied the criteria of N.J.A.C. 17:2-4.1(a)(11) because "the evidence presented at the

hearing establishe[d] that the [five-percent] salary adjustment Hudson County paid to Lenz was paid and included in the base salary of all employees deemed supervisors, like Lenz, and which he was entitled to receive."  The ALJ also determined:

> [T]he evidence presented herein also establishe[d] the retroactive pay to Lenz satisfies N.J.A.C. 17:2-4.1(a)(12) because the proofs show that the adjustment made by Hudson County was not made 'at or near the end of' Lenz's service, as he had left the County's employ well before his civil case was settled.

Moreover, "the testimony of Dermody establishe[d] that even if Lenz or any other similarly situated employee had brought the non-payment of the [five-percent] rule to the County's attention, they would have been entitled to the same retroactive adjustment 'across the board', based upon Hudson County's practice of doing the same."  He further noted that although Dermody could not point to any across-the-board adjustments for any group of individuals relating to the five-percent policy, the five-percent policy "was usually applied in the normal course of business."  And, "Dermody also acknowledged that there were no other retroactive raises like that received by Lenz."

On April 20, 2023, the Board issued its final administrative determination rejecting the ALJ's legal conclusion that Lenz's substantial salary increase was creditable compensation.  Specifically, the Board initially noted:

The ALJ found that Lenz's salary 'adjustment' was not increased 'at or near the end of Lenz's service' because he had left employment prior to the parties settling his lawsuit. This finding ignores the fact that Lenz filed his lawsuit in June 2015, his retirement became effective on March 1, 2018, and the parties settled the lawsuit on or about March 29, 2018. . . . The Board rejects this factual finding and notes that the Agreement was contemporaneous with Lenz's retirement. . . . The Board also notes that the ALJ failed to make any factual findings as to whether it was proper to apportion the retroactive back pay into only the final three years of service, thus inflating Lenz's pension benefit.

Next, the Board rejected the ALJ's recommendation that Lenz's salary increase be included as creditable compensation for pension calculation purposes under N.J.S.A. 43:15A-6(r). The Board found as follows:

Based solely on the fact that Lenz had retired a few weeks prior to the execution of the Agreement, the ALJ found that the significant increase in his final three years of employment was not in anticipation of his retirement. The Board . . . rejects the ALJ's flawed legal analysis, and instead determine[s] that it is undisputed the Agreement was intended to increase his retirement benefit. The ALJ failed to conduct any analysis of whether including the settlement monies in the final three years was proper or simply used as a way to settle his lawsuit in a way most favorable to Lenz and the employer, with the PERS paying an inflated pension benefit over Lenz's lifetime.

The Board concluded it was "undisputed" that Lenz's compensation was not included in his base salary despite his efforts to include the five-percent

rule in his salary. Thus, "[t]he negotiated retroactive salary increases simply do not represent his base salary. Rather, these negotiated salaries represent an individual salary adjustment that would allow Lenz to calculate his retirement benefit using a salary greater than what he actually earned." The Board determined "such an arrangement," whereby the parties settled "years of salary disputes by incorporating all of the retroactive salaries agreed [upon] into the final three years," violated "the stated purpose of N.J.S.A. 43:15[A]-6(r) and the implementing regulations, as it would allow an increase in retirement allowances without adequate compensation to the pension fund." Further, "the [settlement] only applie[d] the [five-percent] policy increase to . . . 2014-2017, despite Lenz's assertion that the [five-percent] policy should have been applied starting in 2008." Thus, the Board found that "between 2008 and 2013, Lenz did not earn the salary upon which he seeks to calculate his retirement benefit and did not make contributions to the pension fund based on the higher salary."

The Board further determined that "the Agreement was clearly structured in contemplation of Lenz's retirement, as it applies the compensation award only to the last three years of Lenz's employment, which conveniently coincides with the years used to calculate his retirement benefit. See N.J.A.C. 17:2-6.20(b)." The Board explained that "[w]hen the salary adjustment clearly

contemplates the member's retirement," N.J.A.C. 17:2-4.1(a) bars the "adjustment as extra compensation." The Board noted the "three years of retroactive salary falls under the definition of extra compensation" under N.J.A.C. 17:2-4.1(a)(11) because "it is not compensation included in the base salary of all employees in the same position."

The Board also found that "Dermody's testimony calls into question whether . . . other employees actually received the increase based upon the unwritten policy." Dermody testified that two Hudson County employees "did not receive the [five percent] . . . in their base salary and had to receive a retroactive adjustment." The Board found that the compensation Lenz received was not a "complete adjustment of his salary" intended to include the five-percent policy during each year of his employment.

The Board concluded:

> [T]here is nothing in the record to establish that all employees in the same position as Lenz received a similar adjustment . . . to only certain years. Rather, . . . as Dermody testified, there was no across-the-board adjustment relating to the [five-percent] policy. . . . Lenz simply cannot establish that all similarly situated employees received such a substantial increase. The Board finds that the compensation Lenz received from the Agreement is nothing more than an individual salary adjustment made in contemplation of retirement that is barred as extra compensation under [N.J.A.C.] 17:2-4.1(a)(12).

Lenz argues the Board's rejection of the ALJ's decision was erroneous and should be reversed. He contends the Board erroneously rejected the ALJ's finding that Lenz's retroactive salary adjustments were pensionable.

More particularly, Lenz argues "there can be no question but that the retroactive salary adjustment agreed to in the settlement was intended to put Lenz at least partially in the position he would have been in had the County honored its longstanding '[five-percent] above' salary practice." He argues the settlement "merely righted a wrong by adjusting his salary to what it should have been . . . consistent with the County's established salary structure for similarly situated employees." Lenz argues his settlement did not involve an individual salary adjustment unconnected to the overall salary structure of the employing agency. He contends "[a]ll the settlement did was adjust his salary to reflect the compensation he would have received if the County had paid him in accordance with the established salary structure applicable to all similarly situated employees."

Lenz argues the timing of the settlement and why the retroactive salary payments coincided with the last years of his employment "has nothing to do with gaming the pension system to alter the actuarial assumptions upon which

10                                                                    A-2480-22

the system depends for its integrity." Rather, the case was settled after Lenz had retired due to his medical issues, and because of a backlog in federal court, he would have had to wait a significant period of time to try the case.

Lenz next argues the Board's determination that the settlement "was contemporaneous with Lenz's retirement" was erroneous because "for all intents and purposes, he retired in 2017," well before the settlement of this matter. Further, Dermody's testimony confirmed Lenz retired in 2017, "well before the case was settled, and that the settlement played no part in Lenz's retirement decision."

Lenz notes the Board overturned the ALJ's decision, in part, because the ALJ failed to make findings as to whether it was proper to include the retroactive back pay into only the final three years of service. Specifically, Lenz asserts that he agreed "to limit the salary adjustment to three years for reasons that clearly made sense," such as his Parkinson's disease and the stress of the litigation affecting his health.

Lenz asserts the Board improperly relied on the County disputing that he served in a supervisory capacity based on the County's interrogatory answers in the underlying suit. He notes that although the County initially disputed Lenz's claim, the County's witnesses "undercut" the County's earlier denials, which led

11

to the settlement. Moreover, he submitted an "unrebutted sworn certification" in support of the County's longstanding practice of the five-percent policy and that he served in a supervisory capacity during all relevant times. PERS did not introduce any evidence to rebut Lenz's certification. He further cites to the letter from the County to the Division in July 2018, confirming that "the amounts of increase of these back pay awards [to Lenz] represent an amount based on a County policy that has been shown to have been in effect for the member and do not exceed his claim under the lawsuit."

Lenz next argues that "[n]othing in [the Board's] final decision was sufficient to overcome the ALJ's finding that Dermody's testimony was credible and truthful." He notes the Board found Dermody's testimony called into question whether "other employees actually received the increase based on the unwritten policy" and that Dermody failed to identify other employees who held the same position as Lenz. Lenz disagrees because Dermody identified two employees who received similar salary adjustments, and Dermody testified both employees were similarly situated to Lenz. Lenz contends that like him, both employees were promoted to supervisory positions, and their pay was increased to comply with the five-percent policy. Regardless, he contends that "for purposes of the [five-percent] rule it would not matter whether an employee

performed precisely the same supervisory responsibilities as another. All that mattered was whether the individual was a supervisor not making more than [five-percent] above those they supervised."

### III.

Our review of an administrative agency's final decision is limited. In re Carter, 191 N.J. 474, 482 (2007). We afford "a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). Absent arbitrary, unreasonable, or capricious action, or a lack of support in the record, the agency's final decision will be sustained. In re Herrmann, 192 N.J. 19, 27-28 (2007). In determining whether agency action is arbitrary, capricious, or unreasonable, we must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Carter, 191 N.J. at 482-83).]

A-2480-22

We defer to the Board's interpretation of the statutes it is charged with enforcing. Thompson v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 449 N.J. Super. 478, 483 (App. Div. 2017) (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007)). "'Such deference has been specifically extended to state agencies that administer pension statutes,' because 'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Ibid. (quoting Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015)).

However, an appellate court is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Richardson, 192 N.J. at 196 (quoting In re Taylor, 158 N.J. 644, 658 (1999)). Also, "[a] reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Stallworth, 208 N.J. at 194 (quoting Carter, 191 N.J. at 483).

Turning to the present case, we begin by reviewing N.J.S.A. 43:15A-6(r), which the Board relied upon in its analysis. N.J.S.A. 43:15A-6(r) provides: "'Compensation' means the base or contractual salary, for services as an employee, which is in accordance with established salary policies of the

14

member's employer for all employees in the same position but shall not include individual salary adjustments which are granted primarily in anticipation of the member's retirement . . . ."

Accordingly, "the Board may only accept pension contributions and grant pension benefits based on a member's 'compensation' as defined by N.J.S.A. 43:15A-6(r)." DiMaria v. Bd. of Trs., Pub. Emps.' Ret. Sys., 225 N.J. Super. 341, 350, (App. Div. 1988). The implementing regulation provides that a PERS member's creditable compensation shall be limited to base salary and "shall not include extra compensation." N.J.A.C. 17:2-4.1(a). Examples of extra compensation include:

> 7. Individual retroactive salary adjustments where no sufficient justification is provided that the adjustment was granted primarily for a reason other than retirement;
>
> . . . .
>
> 9. Compensation in the absence of services;
>
> . . . .
>
> 11. Any form of compensation that is not included in the base salary of all employees in the same position or covered by the same collective bargaining agreement who are members of the PERS and who receive the compensation;

12. Retroactive increments or adjustments made at or near the end of a member's service, unless the adjustment was the result of an across-the-board adjustment for all similarly situated personnel . . . .

[N.J.A.C. 17:2-4.1(a).]

We find the Board's reasoning persuasive. Notwithstanding Lenz's claim he "for all intents and purposes" retired in 2017, it is undisputed his effective retirement date was March 1, 2018—shortly before the settlement was reached. Based on the record and timeline of Lenz's retirement, the Board could reasonably conclude the retroactive salary increases were given primarily in anticipation of his retirement. The Board reasonably concluded the retroactive increases fell under the definition of extra compensation under N.J.A.C. 17:2-4.1(a)(11) and (12). Specifically, the Board noted the compensation was not included in the base salary of all employees in the same position, and there was no indication the retroactive adjustment, at or near the end of Lenz's service, was the result of an across-the-board adjustment for all similarly situated personnel.

In In re Puglisi, a police officer filed a civil rights lawsuit against his employer, the city, alleging that various city administrators and elected officials engaged in political discrimination. 186 N.J. 529, 531 (2006). The officer reached a settlement with the city, resulting in his promotion to the rank of

16

captain, his immediate commencement of a one-year terminal leave period at a captain's salary, and his agreement to retire at the end of the terminal leave period.  Ibid.  The Court concluded the payments made pursuant to the settlement were in anticipation of his retirement and affirmed the denial of pension credit for the settlement proceeds.  Id. at 534.

The Court explained the statutory definition of compensation that excludes salary increases at the end of an employee's career "protect[s] the actuarial soundness of the pension fund by prohibiting the use of 'ad hoc salary increases intended to increase retirement allowances without adequate compensation to the [pension] fund' in calculating pensions."  Ibid.; see also Bd. of Trs. of Tchrs.' Pension & Annuity Fund of N.J. v. La Tronica, 81 N.J. Super. 461, 470-71 (App. Div. 1963) (describing unusual salary increases or arrangements in the final years of employment as "the local board['s] . . . grand gesture of farewell at little expense" because the local board is not itself responsible for the pension payments that must follow over many years).

The concerns expressed in Puglisi and La Tronica were shared by the Board here, which noted the settlement agreement "was clearly structured in contemplation of Lenz's retirement, as it applies the compensation award only to the last three years of Lenz's employment, which conveniently coincides with

17

the years used to calculate his retirement benefit." See N.J.A.C. 17:2-6.20. The Board further noted the County rejected Lenz's efforts to include the additional five percent several times over the years, and "[t]he negotiated retroactive salary increases simply do not represent his base salary. Rather, these negotiated salaries represent an individual salary adjustment that would allow Lenz to calculate his retirement benefit using a salary greater than what he actually earned."

In re Snellbaker does not support Lenz's position. 414 N.J. Super. 26 (App. Div. 2010). There, we concluded that a retroactive salary received by means of a settlement can be creditable compensation when calculating the employee's pension benefit. Id. at 41. Snellbaker was the police chief of Atlantic City, and in that position he received no raises between 2002 and 2006, while his subordinate deputy chiefs received annual raises. Id. at 29-30. He filed a lawsuit against the city and sought, among other relief, retroactive salary increases for 2002 through 2005 under N.J.S.A. 40A:14-179, which required the police chief to be paid more than the amount paid to the highest-ranking subordinate officer. Id. at 30. The lawsuit was settled, and the settlement retroactively increased Snellbaker's salary from 2002 to 2005 to bring the city into compliance with the statute. Id. at 31. The salary increases were identical

to the raises Snellbaker's subordinates had received during the same period. Id. at 32. Snellbaker, unlike Puglisi, did not involve an "individual salary adjustment" unconnected to the overall salary structure of the employing agency, but instead involved a settlement intended to comply with a statutory mandate. Id. at 40-41.

Here, unlike the salary increases in Snellbaker, Lenz's retroactive salary increases were not applied to all of the years for which he claimed he was underpaid. Rather, the salary increases were allocated to the final three years of his employment. This led the Board to conclude the increases, which "coincidentally" coincided with the years used to calculate his retirement benefit, were not compensation under N.J.S.A. 43:15A-6(r). The Board observed these salary adjustments would improperly allow Lenz to base his retirement on a salary he never earned. Moreover, it noted "such an arrangement," whereby the parties settled "years of salary disputes by incorporating all of the retroactive salaries agreed [upon] into the final three years violates the stated purpose of N.J.S.A. 43:15[A]-6(r) and the implementing regulations, as it would allow an increase in retirement allowances without adequate compensation to the pension fund." Indeed, there was ample evidence in the record to support the Board's decision.

A-2480-22

We conclude the Board did not act arbitrarily, capriciously, or unreasonably in denying Lenz's application to include the salary increases from the settlement in determining his pension benefits, and its decision was fairly supported by the record. To the extent we have not specifically addressed any of Lenz's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2480-22