662 A.2d 582

GEORGE R. SMITH, PLAINTIFF–RESPONDENT, v. TOWNSHIP OF ANDOVER, DEFENDANT–APPELLANT.

RICHARD O. MATTOON, II, PLAINTIFF–APPELLANT, v. BOR-OUGH OF PEAPACK AND GLADSTONE, A MUNICIPAL COR-PORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 31, 1995—Decided August 9, 1995.

Before Judges BRODY, LONG and P.G. LEVY.

*Gerald L. Dorf* argued the cause for appellant Tp. of Andover (*Dorf & Dorf,* attorneys; *Mr. Dorf* and *Richard B. Robins,* on the brief).

*Donald R. Belsole* argued the cause for respondent Smith (*Alfred J. Villoresi,* on the brief).

*Richard C. Wischusen* argued the cause for respondent Borough of Peapack and Gladstone (*Fitzpatrick, Reilly, Supple & Gaul,* attorneys; *Mr. Wischusen,* on the brief).

PER CURIAM.

The issue in these appeals, which we have consolidated for the purpose of this opinion, is how to interpret *N.J.S.A.* 40A:14–179 which provides:

> Notwithstanding any other law to the contrary whenever there is a police department organized in any political subdivision of this State and a chief of police appointed to be the executive head of such department, the starting salary of said chief of police and the deputy chief shall be set at a rate not less than five percent above the highest salary of the ranking police officer next in command below the chief of police or deputy chief of police as appropriate. Thereafter, whenever new salary ranges are set by the governing body or appointive authority, unless the chief of police or deputy chief, shall consent to a lesser adjustment, the minimum and maximum salary range for the chief of police and his deputy chief shall be adjusted to reflect at least the same percentage of increase in base salary as is established for other ranking supervisory officers in the department.

The case arose as follows:

## I

### *Smith*

Plaintiff George R. Smith has been Chief of Police of the Andover Township Police Department since October 1983. Defendant Andover Township sets the salary for the chief on an annual basis and also fixes the salary range for that position. After negotiations, the Township adopted a resolution on June 19, 1991, which set the base salary for Chief Smith at $52,397. That amount, which represented a 17.5% increase over his 1990 base salary, was set to remedy past inequities. Because his subordinates' salaries are set by contract, they receive overtime pay, holiday pay and longevity. As a result, the next highest ranking officer, Sergeant Coleman, sometimes received a larger, or equivalent, actual salary than did the chief. Therefore, the large increase was given in 1991 to rectify that situation and "keep the chief ahead of salary increases for patrol officers and Sergeants which had been granted in a collective bargaining agreement adopted just prior to May 15, 1991." The subordinate officers received a 7% increase based on that agreement, bringing Sergeant Coleman's total base salary to $39,723 in 1991.

In 1992, the Township again adopted a resolution to set the police chief's salary but this time he was given only a 1.9% increase over his 1991 base salary. However, the other officers received an increase of 6% based on the two-year contract agree-

ment reached in 1991. As a result, Chief Smith's base salary increased to $53,397 and Sergeant Coleman's, to $42,106.

In 1991, the New Jersey Legislature adopted the statute that is the subject of these appeals. It became effective after the 1991 salary adjustment for the subordinate officers but before the salary adjustment for the chief. Chief Smith brought an action to recover salary increases equal to those of his subordinates, pursuant to *N.J.S.A.* 40A:14–179. He claimed that the statute requires that he be given the same percent increase in base salary as was given to his subordinates, that is, 6%. In addition, Chief Smith sought to recover back pay for the five-day period in which he was denied a paid leave of absence to attend the New Jersey State Association of Chiefs of Police Convention.

*N.J.S.A.* 40A:14–177 provides:

The head of every department, bureau and office in the government of the various municipalities shall give a leave of absence with pay to every person in the service of the ... municipality who is a duly authorized representative of the New Jersey Patrolmen's Benevolent Association, Inc., Fraternal Order of Police, American Federation of Police Officers, Inc., Bronze Shields, Inc., Batons, Vulcan Pioneers, a member organization of the New Jersey Council of Charter Members of the Black Police Association, Inc., Firemen's Mutual Benevolent Association, Inc., the Uniformed Firemen's Association, or the New Jersey State Association of Chiefs of Police, to attend any state or national convention of such organization....

Leave of absence shall be for a period inclusive of the duration of the convention with a reasonable time allowed for time to travel to and from the convention.

The Township had denied Chief Smith paid leave to attend because it contended that he was not a duly authorized representative of the Association of Chiefs of Police, but only a member of that organization. In addition, the Township noted that although the chief had discussed with the Police Commissioner the idea of going to the convention, he never actually requested the permission of the Township Committee.

The trial judge ruled that *N.J.S.A.* 40A:14–179 was meant to maintain the salary differential between the police chief and the next highest ranking officer whenever that officer received a raise. He held that *N.J.S.A.* 40A:14–179 requires that Chief Smith be given a 6% salary increase in his 1992 base salary:

> Now, it seems to me that what [the statute] means is that ... when the municipality comes to act on police salaries it should preserve the spread between the Chief and the next highest ranking officer. And it's to preserve that spread by giving the Chief a salary increase as least as high as the salary increase given to the next highest ranking officer. That's the straightforward, simple meaning of the statute.
>
> . . . .
>
> [I]t means that if the next highest ranking officer—in this case, a Sergeant—gets a 6% increase, the Chief should get a 6% increase. I think it's—that's inescapable. That's what the statute calls for.
>
> There is some language in the statute that talks about ranges and the minimum and the maximum salaries. But it really is aimed at ... keep[ing] an appropriate distancing and spread in the base salaries between the Chief and the next highest ranking officer and in order to make sense, that means the effect of real base salary. That means to me that for 1992 if the Sergeant got a 6% increase, the Chief should get a 6% increase.

As to Chief Smith's claim for back pay, the judge ruled that *N.J.S.A.* 40A:14–177 entitled Chief Smith to a paid leave of absence to attend the convention. He agreed that the statute required that before a rank and file officer would be entitled to a paid leave he or she would have to have been selected as a delegate by the organization. Because the Association of Chiefs of Police is organized in such a way that only one member of each police department is eligible to belong, he held that the police chief is the automatic representative of each department and entitled to attend the convention. However, because Chief Smith did not formally request a paid leave of absence, the judge ruled that he was not entitled to back pay for the 1992 convention, although he would be eligible for compensation to attend future conventions.

The Township appeals the ruling of the trial judge on both issues.

## II

### *Mattoon*

Plaintiff Richard O. Mattoon was appointed Chief of Police of Peapack and Gladstone Police Department in 1990 at a salary of $48,000. At that time the salary range for the position was

$42,000–$55,000. In 1991, Mattoon received a 2% increase, bringing his salary to $49,000. That same year, after the enactment of *N.J.S.A.* 40A:14–179, a three-year collective bargaining agreement covering all police officers except the chief was adopted. It set the following percentage increases: January 1, 1991: 7.6605%; July 7, 1991: 2.0005%; January 1, 1992: 2.9983%; July 7, 1992: 4.0016%; January 1, 1992: 3.9992%; and July 7, 1993: 2.9993%. As a result, the salary of a patrol officer increased by 17% over the three-year period.[1]

Defendant Borough of Peapack and Gladstone, pursuant to *N.J.S.A.* 40A:14–179, increased the police chief's salary range by at least the same percentages and in 1993 his range was raised to $49,157–64,373. As a result, the minimum salary for a police chief was 7.3% higher than the next highest ranking officer's salary. Chief Mattoon's actual salary, however, was increased by a lesser percentage. In 1991, the Chief received a 2% increase, the same as all other borough department heads, such as the clerk, tax collector, and zoning officer. This brought his salary to $49,000. In 1992, all department heads, including the chief, received a 6% increase. and in 1993, a 5% increase. These increases raised Chief Mattoon's salary to $51,940 in 1992 and to $54,537 in 1993.

The chief filed a complaint to recover salary increases equivalent to those awarded to his subordinates, citing *N.J.S.A.* 40A:14–179. The trial judge granted the municipality summary judgment. In so doing, he disagreed with Chief Mattoon's contention that "any raises that are given require that [the police chief] get the same percentage as the next man under him." Instead, he held:

> What the statute appears to say and mean is that if the salary range for the next ranking officer is raised, that [the chief's] salary range must also be raised to reflect the 5 percent difference between the two, but the statute doesn't say they have to give him a 5 percent raise.
>
> . . .

[1] The police sergeant, the next highest ranking officer to the chief, also received similar but slightly lower increases, which resulted in a total increase of 16% from 1991 to 1993.

> I mean, if they wanted to [they could] say if you give the next ranking officer a raise, you have to give the Chief the same raise, at least the same raise, in order to maintain a 5 percent difference, but I don't see them saying that. That would be easy to say.

He also rejected the chief's argument that common sense dictated that the statute be interpreted as he urged:

> [F]rankly, I don't see that in the legislative comment. This merely means that if his salary then is not within the statutory mandated salary range, that he's then entitled to be brought within that range. But it appears to me, and I recognize it's sometimes hard to determine exactly what the Legislature meant, ... that if they raise the salary range [of] the next ranking officer and the salary range for the Chief of Police is not raised as well, then there is a violation of [the] statute.
>
> But if the Chief is making a salary within that salary range, it doesn't say they have to give him a raise. At least I can't find it. If you can tell me where it is, I'll be glad to look.
>
> ....
>
> [Plaintiff] has my complete sympathy, but I can't use that to interpret a statute. I mean, this is a statute which protects him [but] ... only to the extent that the municipality can't raise the salaries of his subordinates so that ... he falls outside the statutorily mandated salary range.... [C]hiefs of police in this county have frequently felt that lower ranking officers with political power were able to get raises whereas the chiefs could not because they were regarded in difficult times as being, well, the Township Manager, and why do we have to give the Township Manager a raise, and why do we have to give this one a raise, and because of political power the lower ranking officers are able to get raises.
>
> If the Legislature wanted to eliminate that, possibly they could have written one word as to what it is. If the next rank[ing] officer gets a percentage increase, the Chief has to get that percentage increase at least.... [T]he statute talks in terms of salary ranges, and there is no dispute whatsoever that the municipality has the correct salary ranges for the lower ranking officer, next ranking officer, and for the Chief, that they meet the statutory mandate, and what they have done is ... they have not given the Chief the same percentage raise that they've given the lower officers, but he nevertheless still falls within the statutory mandated salary range.

Mattoon appeals.

### III

*N.J.S.A.* 40A:14–129 is not a model of clarity. At least this much is agreed: it provides that the starting salary of the chief shall be set not less than 5% above the salary of the next highest ranking officer and that this differential is to be maintained throughout the chief's tenure. It is at this point that controversy arises over the following language:

Thereafter, whenever new salary ranges are set by the governing body or appointive authority, unless the chief of police or deputy chief, shall consent to a lesser adjustment, the minimum and maximum salary range for the chief of police and his deputy chief shall be adjusted to reflect at least the same percentage of increase in base salary as is established for other ranking supervisory officers in the department.

The municipalities argue that the statute means that if the next ranking officer gets a 6% base salary increase,[2] the chief's "range" must be increased by 6% but the chief need not be given an actual salary increase except to maintain the 5% starting differential. For example, if the chief's range was $40,000–$50,000, his salary was $44,000, and the next highest ranking officer received a 6% increase, under the municipalities' theory the chief's range would have to be raised to $42,400–$53,000. However, he would not require a salary increase because his salary would still fall within the new range. The only exception would occur where the next ranking officer's salary was raised to within 5% of that of the chief. In that case, the chief would have to receive enough of an increase to maintain the 5% differential.

The chiefs disagree with this interpretation. They argue that when the next ranking officer receives a raise in base salary, the chief is to receive the same increase in his base salary and that his range shall be adjusted, when necessary, to effectuate this result. According to the chiefs, this is the method the Legislature employed to guarantee that the 5% differential would be maintained.

The legislative history of the statute is sparse. It consists of the statement of the Senate County and Municipal Government Committee:

The Senate County and Municipal Government Committee favorably reports Senate Bill No. 420 with Senate committee amendments.

Senate Bill No. 420 as amended by the committee, requires municipalities to set the starting salary for the chief of police and the deputy chief at a rate not less than five percent above the highest salary of the ranking police officer next in

---

[2] In response to our question during oral argument, all counsel agreed that ordinarily an across-the-board increase negotiated by the rank and file officers results in a "range" increase under the statute because each of the steps in the range increases by the negotiated percentage.

command below the chief or deputy chief. The bill also requires that whenever new salary ranges are set by the governing body or appointive authority, the salary ranges of the chief and deputy chief will be adjusted to reflect at least the same percentage of increase in base salary as is established for other ranking supervisory officers in the department.

The committee amended the bill to provide salary protections to the deputy chief as well as the chief.

Under current law members of the police unions negotiate annual salaries and other financial benefits and have binding arbitration available to them if an impasse is reached.

This bill will afford some protection to a chief of police and a deputy chief whenever a governing body withholds normal salary increases from a particular individual based solely on a personality conflict.

This bill was pre-filed for introduction in the 1990 session pending technical review. As reported, the bill includes the changes required by technical review which has been performed.

This statement indicates that it was the intent of the Legislature to guarantee "some protection" to the chief and that the Legislature apparently contemplated a circumstance in which the governing body withholds normal salary increases altogether. This would not be possible under the chiefs' interpretation which would require a chief to receive *every single* salary increase that is accorded to the next ranking officer. This would effectively give the chief interest arbitration rights insofar as he would be guaranteed all the benefits of interest arbitration to which the rank and file officers are entitled but from which the chief, as a manager, is excluded. *E.g., Egg Harbor Township,* P.E.R.C. No. 85–46, 10 *NJPER* 632 (1984) (police chief is *per se* managerial employee and not subject to the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –29).

Moreover, it would fly in the face of the "some protection" language of the legislative statement by according the chief "absolute" protection from the exercise of the managerial prerogative to withhold increments. Further, it does not square with the words of *N.J.S.A.* 40A:14–179 which prescribe only that the minimum and maximum salary *range* for the chief shall be adjusted to reflect the percent of base salary increase accorded to the next ranking officer. It does not provide that his or her actual salary shall be so adjusted. Finally, and contrary to the chiefs' conten-

tions, it would have the effect of freezing the differential between the chief and the next ranking officer *not* at the 5% mandated by the statute, but at whatever differential was accorded when the chief was hired. Thus, a chief whose initial base salary was set 20% higher than that of the next ranking officer could never have that gap reduced to the statutorily mandated 5%, regardless of his performance, if the chief's lock-step interpretation was accepted.

The municipalities' interpretation, on the other hand, provides the chief "some" protection by mandating a "range" increase in the amount of the actual "base salary" increase accorded the next ranking officer, but not an actual salary increase. The effect of this is to allow the governing body to withhold increases up until the point at which the chief's salary is no longer in range or at which the 5% differential has been breached.

In our view, this interpretation more closely accords with the legislative intent, insofar as we have been able to glean it from the words of *N.J.S.A.* 40A:14–179. The statute ties the increases in the chief's range into increases in the next ranking officer's base salary. It does not create parity between the base salaries themselves. Moreover, we do not believe that, while only mandating a 5% differential, the Legislature intended an interpretation which would cast the initial differential established for the chief in stone. That would be the effect of adopting the chief's view here. This we will not do. Accordingly, we reverse the decision of the trial judge in *Smith* and affirm the trial judge in *Mattoon* as to the issue of salary increases.

As to the remaining issue of Chief Smith's attendance at the Chiefs of Police Convention, we affirm the trial judge's interpretation of *N.J.S.A.* 40A:14–177 as fully according with the language of the Act.

Affirmed in part; reversed in part.