997 A.2d 288 (2010)
414 N.J. Super. 26
In the Matter of Arthur C. SNELLBAKER.
DOCKET NO. A-1443-09T2.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 2010.
Decided July 8, 2010.
*289 Salvatore Perillo, Linwood, argued the cause for appellant Arthur C. Snellbaker (Nehmad, Perillo & Davis, attorneys; Mr. Perillo, on the brief).
Danielle P. Bradus, Deputy Attorney General, argued the cause for respondent State of New Jersey (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Bradus, on the brief).
Before Judges AXELRAD, SAPP-PETERSON[1] and ESPINOSA.
The opinion of the court was delivered by
ESPINOSA, J.A.D.
Appellant Arthur Snellbaker appeals from a final decision of the New Jersey Division of Pensions and Benefits (the Division) that denied him credit toward his pension for retroactive pay increases made pursuant to the settlement of a lawsuit. We reverse.
This matter was referred to the Office of Administrative Law after Snellbaker requested a fair hearing following the Division's determination that a retroactive payment of $185,392.36 was not creditable for pension purposes.
The following testimony and evidence was presented at the hearing before the Administrative Law Judge (ALJ).
Snellbaker was employed by the City of Atlantic City (the City) as a police officer for thirty-eight years and served as Chief of Police from 2000 to 2006. In January 2002, a new mayor, Lorenzo Langford, assumed office. Snellbaker described his relationship with Langford as "stormy" and "antagonistic." In an apparent effort to shift leadership of the police department to a person of his choice, Langford appointed a police captain, Robert L. Flipping, to the *290 civilian position of Director of Public Safety. Pursuant to N.J.S.A. 40A:14-118, the day-to-day operations of the police department remained under the direction of Snellbaker. However, Flipping attempted to exercise authority over the day-to-day operations and, when Snellbaker resisted, Langford suspended him for four days for refusing to follow a direct order from Flipping.
Snellbaker filed a four-count verified complaint in lieu of prerogative writs and order to show cause against the City and Flipping that included a claim under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. By order and written decision dated October 20, 2003, Valerie H. Armstrong, A.J.S.C., concluded that a directive issued by Flipping violated N.J.S.A. 40A:14-118; enjoined Flipping from interfering with Snellbaker's duties and responsibilities under that statute; and vacated Snellbaker's suspension.
From 2002 through 2006, Snellbaker was paid a base salary of $109,981 and Langford declined to grant him any increase in salary. The ALJ stated that, during those years, Snellbaker's subordinate deputy chiefs received regular increases: 3.5% in 2002, 10% in 2003, 11% in 2004 and 5% in 2005. A schedule prepared by the City set forth the salaries of the deputy chiefs for those years and revealed that there were six different deputy chiefs in the department, each of whom received a base salary that exceeded the base salary paid to Snellbaker.
Snellbaker added a claim to his ongoing litigation against the City for retroactive salary increases for 2002 through 2005, based upon N.J.S.A. 40A:14-179, which provides, in pertinent part:
[T]he starting base salary of said chief of police and the deputy chief shall be set at a rate that is higher than the highest base salary of the ranking police officer next in command below the chief of police or deputy chief of police as appropriate. Thereafter, whenever new base salary ranges are set by the governing body or appointive authority, unless the chief of police or deputy chief shall consent to a lesser adjustment, the base salary for the chief of police and his deputy chief shall be adjusted to ensure that their base salaries remain higher than the base salaries of other ranking supervisory officers in the department.
[(Emphasis added).]
At a minimum, the statute requires that the chief be paid a higher base salary than the next highest ranking officer throughout his tenure. See Smith v. Twp. of Andover, 283 N.J.Super. 452, 458, 461, 662 A.2d 582 (App.Div.) (discussing statute before 1995 amendment), certif. denied, 143 N.J. 320, 670 A.2d 1061 (1995).
In November 2005, Langford was defeated in his bid for reelection. The new administration promptly addressed settlement of Snellbaker's lawsuit.
Domenic Cappella, Assistant Business Administrator for the City, acknowledged that Snellbaker had not received any salary increases during the time that Langford was mayor and testified regarding the settlement of the retroactive salary increase issue as follows:
Q. Focus if you could on any discussions concerning his salary increases. First of all, did you have any discussions with the mayor and/or the city attorney about the chief's legal entitlement to salary increases for that four-year period of time.
A. I had the discussion with the solicitor, Kim Baldwin, I recall. And I believe once with other personal [sic] matters with the mayor, ... but I was made aware that ... under a Title 40 ... that it said that the deputy chiefs or his *291 subordinates wouldn't make any salaries or monies more than the chief. That's number one. Number two, ... I saw or they showed me where he did not receive any raises while he was the chief, which, I believe, when I was there, it was for four years. I know he was chief before that but
Q. Was there any discussion in terms of how the raises would be arrived at that were ultimately granted to the chief?
A. We would compare them to what the deputy chiefs got and the supervisors, I believe, through the bargaining unit of the officers.
Asked if the salary adjustments for 2002 through 2005 were "extra compensation granted primarily in anticipation of the chief's retirement," Cappella replied, "[A]bsolutely not." He testified that "this was strictly to correct a wrong, make whatever was done correct." As Cappella acknowledged, the wrong to be corrected was the City's failure to comply with N.J.S.A. 40A:14-179. The way it was corrected was to give Snellbaker increases comparable to the new salary ranges set for the other ranking supervisory officers in the department to bring the City into compliance with N.J.S.A. 40A:14-179.
A settlement was reached that was memorialized in two separate documents. The Separation Agreement and Release (the Settlement Agreement) entered into by Snellbaker and the City was executed in April 2006. The Settlement Agreement provided that Snellbaker would receive "unconditional compensation, payments and benefits from CITY if and only if SNELLBAKER ceases to be employed by CITY as of April 7, 2006," and identified those payments as (a) his final pay through the Separation Date, (b) the payment of retroactive annual salary increases effective January 1, 2002 up to and including January 1, 2005 pursuant to the terms of a Supplemental Separation Agreement (the Supplemental Agreement), (c) unused vacation, sick, compensatory and personal days, to be paid based upon 521.5 days at a rate that reflects the retroactive annual salary increases set forth in the Supplemental Agreement and (d) post-retirement benefits. The Settlement Agreement also authorized a lump sum payment of $500,000 to Snellbaker that the ALJ found was in satisfaction of his CEPA claim. The Settlement Agreement explicitly stated that this lump sum payment was "for compensatory damages and do[es] not constitute backpay."
The stated purpose of the Supplemental Agreement is to set forth "the agreement between the parties with regard to back pay and salary adjustments." The adjustments are identified as follows:
Effective January 1, 2002, SNELLBAKER'S salary shall be increased by 3.5%. Effective January 1, 2003 SNELLBAKER'S salary shall be increased by 10%. Effective January 1, 2004, SNELLBAKER'S salary shall be increased by 11%. Effective January 1, 2005, SNELLBAKER'S salary shall be increased by 5%. Total retroactive amount to be paid by the City to SNELLBAKER is approximately $185,392.36 through April 7, 2006.
The ALJ found that, with these adjustments, Snellbaker "received the same percentage increases previously granted to his subordinates[.]" Like the Settlement Agreement, the Supplemental Agreement stated that the City would make the identified payment of back pay and salary adjustments "if and only if SNELLBAKER ceases to be employed by CITY as of April 7, 2006," (the "if and only if" clause).
Snellbaker testified that he wanted to retire as of April 2006 to care for his wife; that he had not worked since December *292 2005 when she was diagnosed with cancer; and that he had used accrued leave time to care for her in the interim. The ALJ specifically found Snellbaker's testimony "on his reason for retiring in April 2006 to be credible and believable."
Snellbaker's application for special retirement was approved by the Board of Trustees of the Police and Fire Retirement System (PFRS Board) in May 2006. Nearly two years later, the Division notified Snellbaker by letter dated January 4, 2008, that the payment of $185,392.36 in retroactive salary increases was not creditable compensation for pension purposes. The letter stated in part
The Division finds that the Agreement between the City and yourself was executed in exchange for your retirement and clearly in violation of the PFRS State Laws and Regulations....
....
The Division finds that the statutes and regulations governing the PFRS do not permit the City of Atlantic City to include the additional salary as part of your creditable PFRS base salary when that salary is payable only upon you retiring. This contingency clause is considered an unauthorized incentive to retire which is in direct violation of State law. As such, the Division views the retroactive payments as extra compensation which is clearly in violation of the regulations.
[(Emphasis added).]
The statute and regulation cited in the letter use similar language to define the compensation upon which retirement benefits will be calculated. N.J.S.A. 43:16A-1(26) defines compensation as "the base salary ... which is in accordance with established salary policies of the member's employer for all employees in the same position but shall not include individual salary adjustments which are granted primarily in anticipation of the member's retirement ...." (Emphasis added). N.J.A.C. 17:4-4.1(a) states that the compensation of a member creditable for retirement and death benefits is "limited to base salary, and shall not include extra compensation." "Base salary" is defined as
the annual compensation of a member, in accordance with established salary policies of the member's employer for all employees in the same position ... which is paid in regular, periodic installments in accordance with the payroll cycle of the employer.
[N.J.A.C. 17:4-4.1(a)(1).]
"Extra compensation," the amount to be excluded from determining retirement benefits, is defined as
individual salary adjustments which are granted primarily in anticipation of a member's retirement or as additional remuneration for performing temporary duties beyond the regular workday.
[(Emphasis added).]
The regulation sets forth a non-exclusive list of examples of forms of compensation that have been identified as extra compensation. The following were identified by the Division in its letter in support of its determination that the retroactive salary increases here were not creditable:
vii. Individual retroactive salary adjustments where no sufficient justification is provided that the adjustment was granted primarily for a reason other than retirement;
....
ix. Increments or adjustments granted for retirement credit;
x. Increments or adjustments in recognition of the member's forthcoming retirement;
....

*293 xii. Retroactive increments or adjustments made at or near the end of a member's service, unless the adjustment was the result of an across-the-board adjustment for all similarly situated personnel[2]....
Michael R. Czyzyk, Supervisor of the Division's External Audit Unit, authored the January 4, 2008 letter and testified before the ALJ. Czyzyk was aware of the fact that Snellbaker had not received any salary increases over the period of time for which the retroactive increases were awarded and did not consider the payment to be a windfall. He explained that he reversed the Division's earlier decision to credit the retroactive increase because of his concern that the "if and only if" clause in the Supplemental Agreement rendered the retroactive increase a salary adjustment granted primarily in anticipation of petitioner's retirement as an inducement for Snellbaker to retire.
Czyzyk admitted that he had no knowledge of the specifics of how the retroactive salary increases were awarded. The ALJ specifically questioned him about this point:
Q. ... The assertion is he was denied these increases improperly and that as a resolution of the litigation, he was given the money he should have gotten in the first place.
A. Correct.
Q. Now, under that set of facts, with nothing else
A. Yes.
Q.  it's my understanding you said you would have included that money in the pension calculation?
A. We would have foundwe would have found it to be acceptable, yes, the increases.
Pursuant to N.J.A.C. 17:4-4.1(d), the Board was required to conduct an investigation of "increases in compensation reported for credit which exceed reasonably anticipated annual compensation increases for members of the retirement system...." Since Czyzyk testified that the increases here did not constitute a windfall, no investigation was required for that purpose. However, the Board was also authorized by N.J.A.C. 17:4-4.1(e) to conduct an investigation as to the purpose for the increase. Specifically, the Board
May require that a notarized statement under oath be obtained from the member's employer that the reported compensation was not granted primarily in anticipation of retirement, and conforms with the statutes and rules governing the retirement system.
[N.J.A.C. 17:4-4.1(e)(1).]
The record does not indicate that the Board attempted to secure such information. The testimony from Cappella demonstrated that such an inquiry would have produced a statement on behalf of the employer that the retroactive increases were not granted primarily in anticipation of retirement, but rather, to correct a wrong and pay Snellbaker what was lawfully due him.
As the ALJ found, Czyzyk "agreed that the intent of the parties entering into the agreement was controlling, and that he had no knowledge of what their intent was." Although a concern was raised by the "if and only if" clause in the Supplemental Agreement, Czyzyk conducted no investigation to confirm or refute his concerns *294 regarding that language. He was, then, unaware that the increases were made to effectively include Snellbaker in across-the-board adjustments given to his deputy chiefs to bring the City in compliance with N.J.S.A. 40A:14-179. At the hearing, he conceded that if he had known these facts, he would have found the retroactive salary increases to be creditable compensation for retirement benefits.
After hearing the testimony and making credibility determinations, the ALJ reached conclusions regarding the intent of the parties that formed the basis for his findings:
I am satisfied that the City did not agree to pay the retroactive compensation to petitioner in order to induce him to retire. Rather, the City paid the retroactive compensation because petitioner was entitled to the money as a matter of law.
....
... Atlantic City erred when it froze petitioner's salary in 2002 and paid each of his subordinate deputies a base salary in excess of that paid to petitioner. The only possible conclusion is that Atlantic City did not agree to pay petitioner the retroactive compensation to induce him to retire; the City agreed to pay because, as [Cappella] testified, petitioner was entitled to the compensation as a matter of law. If the City had continued to refuse to pay, it would have lost the law suit.
Therefore, I FIND that the retroactive compensation granted petitioner in paragraph 3 of the Supplemental Agreement was not awarded in anticipation of his retirement. I FIND that petitioner's base salary as adjusted by the retroactive pay increase was in accordance with established salary policies of the City of Atlantic City and the State of New Jersey for all employees in the same position. I further FIND that the individual retroactive salary adjustments were granted with sufficient justification. I further FIND that the retroactive salary increases were not increments or adjustments granted for retirement credit, or in recognition of petitioner's retirement.
....
Accordingly, I FIND and CONCLUDE that petitioner was not induced to retire by the promise of an increase to his salary. He retired because of his wife's medical condition.
[(Emphasis added).]
The ALJ concluded that Snellbaker was "entitled to the retroactive increases in his base salary regardless of the language of the Supplemental Separation Agreement" and, therefore, "entitled to have those increases included in the calculation of his pension benefit."
N.J.S.A. 52:14B-10(c) provides:
The agency head may not reject or modify any findings of fact as to issues of credibility of lay witness testimony unless it is first determined from a review of the record that the findings are arbitrary, capricious or unreasonable or are not supported by sufficient, competent, and credible evidence in the record.
Under this statute, it is not for this court "or the agency head to disturb [a] credibility determination, made after due consideration of the witnesses' testimony and demeanor during the hearing." H.K. v. State of N.J. Dept. of Human Servs., Div. of Med. Assistance and Health Servs., 184 N.J. 367, 384, 877 A.2d 1218 (2005) (agency's expertise irrelevant because ALJ's credibility decision mandated a finding based on settled law); see also Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587, 538 A.2d 794 (1988). This deference even extends to credibility determinations that are *295 not explicitly enunciated if the record as a whole makes these findings clear. In re Taylor, 158 N.J. 644, 659-60, 731 A.2d 35 (1999).
The Division explicitly adopted the ALJ's findings of fact, including his findings as to: the intent of the parties in entering into the Supplemental Agreement, i.e., that Snellbaker intended to retire because of his wife's illness; that Snellbaker was entitled to the salary increases pursuant to N.J.S.A. 40A:14-179; and that Atlantic City agreed to pay the retroactive salary increases because he was entitled to them as a matter of law, pursuant to N.J.S.A. 40A:14-179. The ALJ further found that the increases were in accordance with established salary policies of the City and the State, a finding not rejected by the Division.
Despite its adoption of these findings, the Division stated that the ALJ erred because "the reasons behind the entering of the Supplemental Settlement Agreement are irrelevant." Therefore, the Division rejected the ALJ's conclusions of law and determined that the retroactive salary increases were not creditable for retirement benefits. This appeal followed, presenting the following issues for our consideration:
POINT I
THE SALARY RAISE RECEIVED BY CHIEF SNELLBAKER DID NOT CONSTITUTE "EXTRA COMPENSATION" "GRANTED PRIMARILY IN ANTICIPATION OF A MEMBER'S RETIREMENT."
POINT II
THE PFRS BOARD, AWARE OF THE SUPPLEMENTAL SEPARATION AGREEMENT BEFORE THE CHIEF'S RETIREMENT, IS EQUITABLY ESTOPPED FROM CLAIMING IT "DISCOVERED" THE AGREEMENT A YEAR AND A HALF LATTER.
We have a limited role in reviewing the action of an administrative agency. Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186 N.J. 5, 15, 890 A.2d 922 (2006). In Utley v. Board of Review, Department of Labor, 194 N.J. 534, 551, 946 A.2d 1039 (2008), the Supreme Court reviewed the levels of deference due to different types of decisions by administrative agencies. We must defer to the agency's findings of facts, and give some deference to its interpretation of its enabling legislation or the exercise of agency expertise, but we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Ibid. (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973)). See also Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 224, 966 A.2d 1020 (2009). We consider such legal issues de novo and without deference to the agency. See Pressler, Current N.J. Court Rules, comment 3.4.2 on R. 2:10-2 (2010).
The Division's reversal of the ALJ's decision turned exclusively on its interpretation of a legal issue, i.e., whether the retroactive salary increases here were creditable for pension and death benefit purposes pursuant to N.J.S.A. 43:16A-1(26) and N.J.A.C. 17:4-4.1. After careful review of the record and the arguments advanced, we conclude that the Division's legal analysis was erroneous.
As a preliminary matter, we reject the Division's premise that "the reasons behind the entering of the Supplemental Settlement Agreement are irrelevant" as a matter of law. The case cited by the Division to support its premise, Dontzin v. Myer, 301 N.J.Super. 501, 694 A.2d 264 (App.Div.1997), is inapposite. Dontzin did not provide guidance for the interpretation *296 of the statute and regulation applicable here, but merely recited a general principle of contract interpretation in determining a completely different legal issue whether plaintiffs made a sufficient showing to pierce the attorney-client privilege pursuant to the three-prong test established in In re Kozlov, 79 N.J. 232, 398 A.2d 882 (1979).
In interpreting this statute, we look first to its plain language to understand and give effect to the intent of the Legislature. Sanders v. Langemeier, 199 N.J. 366, 374, 972 A.2d 1103 (2009); Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 263-64, 952 A.2d 1077 (2008). In excluding "individual salary adjustments which are granted primarily in anticipation of the member's retirement" from creditable compensation, N.J.S.A. 43:16A-1(26) (emphasis added), the Legislature invited an examination of the intent and purposes of the parties in the award of salary increases and a determination as to the primary purpose for the award. Nothing in the statute suggests that the mere fact that a salary adjustment coincides with an employee's retirement renders it an adjustment "granted primarily in anticipation of" the employee's retirement, without regard to the existence of other recognized objectives.
Notably, the Division did not reject the ALJ's finding that the City unlawfully withheld salary increases to Snellbaker and that the increases were given to Snellbaker to "correct a wrong," because Snellbaker was entitled to the compensation as a matter of law. The Supervisor of the Division's External Audit unit acknowledged that such payments would be creditable for retirement benefits. Yet, the Division found the "if and only if" language in the Supplemental Agreement to trump all other considerations in determining that the retroactive salary increases constituted extra compensation granted primarily in anticipation of retirement. This entailed turning a willfully blind eye to factors that were, as the ALJ found, the real motivating factors for including a retroactive salary increase in the agreement reached and for Snellbaker's retirement.
By viewing the "if and only if" language as conditioning the increase upon retirement, the Division ignored the reality that the City did not have the legal authority to require Snellbaker to retire to receive the payments it had wrongfully withheld. The fact that the Division attached too much importance to this language is further reflected by the use of identical language in the Settlement Agreement. Pursuant to that agreement, Snellbaker would receive "his final pay through the Separation Date" also "if and only if" he retired on the Separation Date. Plainly, the City could not lawfully refuse to pay Snellbaker his salary unless he retired. The legal effect of the "if and only if" clause in that context is, therefore, nil.
The Division also relied upon In re Puglisi, 186 N.J. 529, 897 A.2d 1015 (2006), describing it as a "similar case, where a police officer filed a civil rights suit against the employer and entered into a settlement agreement giving him a promotion but requiring him to retire." There are, however, significant differences between Puglisi and this case that dictate a different result here.
Puglisi was a lieutenant in the New Brunswick Police Department when he filed a federal civil rights lawsuit in 1990. As part of the settlement in 1998, he was promoted to captain and immediately began a one-year terminal leave period in which he received a captain's salary. The PFRS concluded that his pensions should have been based only on his lieutenant's salary and not included an increase of pensionable base salary reflecting his promotion *297 to captain. The PFRS Board agreed that Puglisi "can collect the additional salary as captain, but the additional salary earned ... is not creditable in the PFRS as he was on terminal leave from the day he was promoted as captain to the date of his retirement." Puglisi, supra, 186 N.J. at 532, 897 A.2d 1015 (emphasis added).
In rejecting Puglisi's argument, the Supreme Court adopted the following analysis by this court:
The purpose of N.J.S.A. 43:16A-1(26) and the implementing regulations is to protect the actuarial soundness of the pension fund by prohibiting the use of "ad hoc salary increases intended to increase retirement allowances without adequate compensation to the [pension] fund" in calculating pensions. Therefore, any salary increase made primarily in anticipation of retirement must be disregarded in determining the amount of a retiree's pension, even if the increase was also designed to achieve other objectives, such as increasing the overall amount of the employee's compensation.
[Id. at 534, 897 A.2d 1015 (emphasis added).]
This language anticipates that an increase may be designed to achieve multiple objectives and that those objectives will be considered in a fact-sensitive analysis. Using the same language as the statute and regulation, the Court excludes only those increases made "primarily in anticipation of retirement." See also N.J.S.A. 43:16A-1(26); N.J.A.C. 17:4-4.1(a). The Division ignored its obligation to weigh these factors, concluding that the existence of other objectives was irrelevant.
Although the salary increases in Puglisi and here were both awarded in the settlement of a lawsuit, there are fundamental distinctions in the circumstances of the settlement. First, while the Court in Puglisi explicitly found that the promotion and salary increase constituted an "individual salary adjustment," Puglisi, supra, 186 N.J. at 534, 897 A.2d 1015, that was not the case here. The ALJ found that the retroactive pay increase here was not an ad hoc salary increase, but "was in accordance with established salary policies of the City of Atlantic City and the State of New Jersey for all employees in the same position." This brought the salary increase within an exception to "extra compensation" exemplified in N.J.A.C. 17:4-4.1(a)(2)(xii) ("Retroactive increments or adjustments made at or near the end of a member's service, unless the adjustment was the result of an across-the-board adjustment for all similarly situated personnel...."). Second, in Puglisi, the employer had the discretion to decide whether or not to award a promotion and salary increase. Here, the City lacked such discretion and indeed, had a legal obligation to award compensation it had unlawfully withheld.
Finally, a concern that the increase compromised the "actuarial soundness of the pension fund" is unfounded. As Czyzyk testified, the amount was not a windfall but was consistent with what Snellbaker would have received if the compensation had not been wrongfully withheld.
We therefore conclude that the Division employed an erroneous interpretation of the law in concluding that the retroactive salary increases were not creditable for retirement benefits. The mere fact that an increase coincides with retirement is not dispositive of the issue. It is necessary to evaluate all the factors relevant to the award of the increase and the employee's retirement to determine whether the salary adjustment was granted primarily in anticipation of retirement. When the facts found by the ALJ and adopted by the *298 Division are given appropriate weight here, it is an ineluctable conclusion that the retroactive salary increases were not granted primarily for that purpose.
Reversed.
NOTES
[1] Judge Sapp-Peterson did not participate in oral argument. However, the parties consented to her participation in the decision.
[2] In reciting these examples, the Division omitted the underlined portion of xii from its letter.