**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2071-18T2

IN THE MATTER OF SEAN
TONNER, EAST JERSEY STATE
PRISON, DEPARTMENT OF
CORRECTIONS.

_____

Submitted November 14, 2019 – Decided December 30, 2019

Before Judges Nugent and Suter.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-1063.

Di Francesco Bateman, attorneys for appellant Sean Tonner (Robert Philip Manetta and Richard Paul Flaum, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Department of Corrections (Jane C. Schuster, Assistant Attorney General, of counsel; Nicholas A. Sullivan, Deputy Attorney General, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Donna Sue Arons, Assistant Attorney General, of counsel; Steven Michael Gleeson, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant Sean Tonner appeals the December 21, 2018 final decision of the Civil Service Commission (Commission), affirming disciplinary charges against him by the Department of Corrections, East Jersey State Prison (the Department), and a sixty working day suspension and demotion to the position of Corrections Sergeant. We affirm the decision and penalties imposed.

## I.

On February 15, 2017, Tonner, a Senior Investigator in the Special Investigation Division of the Department, attended a meeting at the Department's Central Office where he was served with disciplinary charges, unrelated to this appeal, seeking his suspension and demotion. Tonner disputed the charges, believing them to be fabricated by his supervisor, Jerome Scott. Tonner was "visibly shaken" and "upset" at the meeting. He was instructed to go back to his office at Edna Mahan Correctional Facility for Women (Edna Mahan) to remove his personal belongings because he was being temporarily transferred to another facility. Adrian Ellison, a union representative with the Fraternal Order of Police (FOP), attended the meeting as Tonner's union representative. Ellison went with Tonner to Edna Mahan when Tonner left to

2

gather his things.  Ellison also was accompanied by Senior Investigator Valisa Leonard, who was Sergeant-at-Arms for the FOP.

Scott was involved in bringing the unrelated disciplinary charges that were the subject of the meeting and had disciplined Tonner in the past.  Scott was not at the facility when Tonner arrived because he had been told to leave at Ellison's suggestion.  Ellison was with Tonner as he gathered things from his desk; Leonard remained outside the office.  Ellison testified Tonner asked him "[w]hy did you tell them not to have that p---y Jerome here[?]  I was going to shoot that mother f----r."  Ellison asked Leonard to come into the office.  She testified Tonner's "face was red and his eyes were a little like water," she testified.  She heard Tonner refer to Scott as "the steroid mother f----r."  When Ellison asked Tonner to repeat what he had said before Leonard was in the room, Tonner would not respond, saying only "every time I talk to you I get in trouble." Outside, Ellison told Leonard what Tonner said about threatening to shoot Scott, and asked her to go back to obtain Tonner's service weapon.  Although she requested Tonner to turn over his gun, he would not.  She testified he said he was not going to hurt anybody.  Tonner told Leonard he "was not going to do anything to that man."

Ellison and Leonard left the facility. Ellison contacted Chief Investigator Manuel Alfonso, reporting what Tonner had said. Alfonso contacted Deputy Chief Investigator Edwin Soltys. He dispatched Soltys to Tonner's home in Pennsylvania to retrieve Tonner's service weapon.

Soltys testified that, accompanied by other investigators and local township police, he went to Tonner's home and retrieved the weapon from him without incident. Based on the duty to warn protocol, Soltys notified Scott of the alleged threat by Tonner. Scott asked that the matter be pursued criminally. Alfonso directed Soltys to refer the matter to the Hunterdon County Prosecutor's Office (HCPO). It was referred on February 16 or 17, 2017.

On June 12, 2017, the HCPO declined to bring criminal charges against Tonner. Soltys then conducted an administrative investigation of the incident, which included a video-recorded interview of Tonner. In his video-recorded statement, Tonner denied saying he wanted to shoot Scott. He wanted to know why Scott was not present at Edna Mahan when he went there with Ellison because Tonner thought Scott owed him an explanation for the fifteen-day suspension and demotion he was facing. Scott had repeatedly disciplined Tonner. Tonner thought Ellison had let him down as his union representative. His venting to Leonard had to do with Ellison, not Scott. He thought Ellison

fabricated the allegations against him because Ellison and Scott were working together to get him fired. He denied talking to Leonard about hurting anyone.

On July 11, 2017, the Department served Tonner with a Preliminary Notice of Disciplinary action (PNDA) in which Tonner was charged with: conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12); and violation of Department Human Resource Bulletin (HRB) 84-17: §C-11, conduct unbecoming an employee; §C-24, threatening, intimidating, harassing, coercing or interfering with fellow employees on State property and §E-1, violation of a rule, regulation, policy, procedure, order or administrative decision.

The Department conducted a hearing, sustained the charges and issued a Final Notice of Disciplinary Action (FNDA) on October 10, 2017. Under the FNDA, Tonner was suspended for a period of sixty working days and demoted to Corrections Sergeant. He appealed the FNDA and the matter was transmitted to the Office of Administrative Law (OAL) as a contested case.

The administrative law judge (ALJ) conducted a two-day plenary hearing. Tonner did not testify, but his video-recorded statement was part of the record. The ALJ found Ellison's testimony about his verbal exchange with Tonner to be credible. The ALJ also found Leonard to be extremely credible because it was

clear from her demeanor, she and Tonner remained friends, she had no reason to fabricate her testimony and was visibly upset during her testimony. The ALJ found Leonard's testimony provided "corroboration to Ellison's testimonial account of the events of February 15, [2017]." Although Tonner claimed he was expressing his frustrations with Ellison, Leonard's testimony made clear the expressions were about Scott, not Ellison. Also, Leonard had testified Tonner did not deny making the threat; he "just dismissed Leonard's concerns that he may be a danger."

The ALJ's November 15, 2018 initial decision rejected Tonner's argument that under the "forty-five" day rule, the disciplinary charges against him were filed out-of-time. The timeframe to file charges did not start until the day after the HCPO declined to prosecute and were filed within forty-five days thereafter.

The ALJ's initial decision recommended all charges and discipline against Tonner be sustained. The ALJ found Tonner threatened to shoot his supervisor "in the presence of another [Department] Investigator while armed with a [Department] service weapon . . . ." That conduct was conduct unbecoming a public employee under N.J.A.C. 4A:2-2.3(a)(6) because it showed a "significant lack of judgment," violating his "obligations and duties." This conduct "violated this standard of good behavior" which was sufficient to find a violation of "other

sufficient cause." The ALJ also found the conduct violated the HRB 84-17, which required all employees to follow all policies of the Department.

In determining the appropriate penalty, the ALJ considered Tonner's history of disciplinary violations, record of commendations, seriousness of the current offense, impact on the institution and status as a law enforcement officer. The ALJ concluded the imposition of major discipline, consisting of a sixty-day suspension and demotion, was warranted.

On December 21, 2018, the Commission, having independently evaluated the record, adopted the findings of the ALJ, and affirmed the charges, discipline, and demotion. On appeal, Tonner raises the following issues:

> I. RESPONDENT FAILED TO DELIVER THE DISCIPLINARY COMPLAINT WITHIN THE FORTY-FIVE DAY PERIOD PROVIDED FOR IN N.J.S.A. 40A:14-147 AND THUS THE DISCIPLINE MUST BE DISMISSED IN ITS ENTIRETY.
>
> II. ALJ FRITCH['S] FACTUAL FINDINGS ARE NOT SUPPORTED BY REASONABLY CREDIBLE EVIDENCE IN THE RECORD.
>
> III. THE DECISION TO DEMOTE AND SUSPEND APPELLANT WAS ARBITRARY, CAPRICIOUS, AND THEREFORE NOT REASONABLY PROPORTIONAL TO THE ALLEGED OFFENSE.

## II.

Our review of an appeal from a final decision of an administrative agency is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). An agency's decision should be upheld unless there is a "clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28).

To determine whether an agency's decision is arbitrary, capricious, or unreasonable, we assess:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Stallworth, 208 N.J. 182, 194 (2011) (citing In re Carter, 191 N.J. 474, 482-83 (2007)).]

No deference is required with respect to an "agency's interpretation of a statute or its determination of a strictly legal issue," which is reviewed de novo. Russo, 206 N.J. at 27 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

8

We agree with the Commission and ALJ that the charges against Tonner were timely filed under N.J.S.A. 40A:14-147. The statute provides:

> [a] complaint charging a violation of the internal rules and regulations established for the conduct of a law enforcement unit shall be filed no later than the [forty-fifth] day after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based. The [forty-five]-day time limit shall not apply if an investigation of a law enforcement officer for a violation of the internal rules or regulations of the law enforcement unit is included <u>directly or indirectly</u> within a concurrent investigation of that officer for a violation of the criminal laws of this State. <u>The [forty-five]-day limit shall begin on the day after the disposition of the criminal investigation.</u>
>
> [N.J.S.A. 40A:14-147 (emphasis added).]

The Collective Bargaining agreement[1] (CBA) cited by Tonner includes a nearly identical provision.

> All disciplinary charges shall be brought within [forty-five] days after the date on which the Chief SID (Corrections), Vice Chairman (Parole), Chief Investigator (Juvenile Justice), or in each's absence his/her designee, obtains sufficient information to file the matter upon which the charge is based, <u>except for those acts which would constitute a crime.</u> In the absence of the institution of the charge within the [forty-five]-day time period, the charge shall be dismissed. The employee's whole record of

_____

[1] The CBA cited by Tonner extended from 2011 to 2015. This incident occurred in 2017. It is not clear if this CBA applies.

employment, however, may be considered with respect to the appropriateness of the penalty to be imposed. Charges under EEO shall be brought within [sixty] days.

[(emphasis added).]

We are satisfied this case comes within the tolling provision of the statute. The matter was referred to the HCPO for prosecution within a day or two of the incident. Once the HCPO declined to proceed on June 12, 2017, the Department promptly commenced its investigation. This included a video-recorded interview of Tonner on June 23, 2017. The Department's investigation concluded on July 5, 2017. The PNDA was served on July 11, 2017, well within forty-five days from when the HCPO declined prosecution.

The statute expressly provided the "[forty-five]-day limit shall begin on the day after the disposition of the criminal investigation." Applying that language, the timeframe began to run on June 13, 2017, the day after the HCPO declined to prosecute, and the charges were served within forty-five days thereafter. Tonner's other arguments about the forty-five-day rule do not warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Tonner contends that the agency's decision was arbitrary, capricious and unreasonable because the case was based on one person's word against another. In reviewing the final decision of an agency, the question is "whether the

findings of the agency could reasonably have been reached on sufficient credible evidence presented in the record, 'considering the "proofs as a whole," with due regard to the opportunity of the one who heard the witnesses to judge of their credibility.'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Taylor, 158 N.J. 644, 656 (1999)). Our thorough review of the record shows there was substantial, credible evidence in the record to support the findings. We do not agree with Tonner that the agency's decision was arbitrary, capricious or unreasonable.

The appointing authority bears the burden of proof to show that its action was appropriate. N.J.S.A. 11A:2-21; N.J.A.C. 4A:2-1.4(a). The authority is required to report their findings of fact and conclusions of law based upon the preponderance of the sufficient, competent and credible evidence. In re Polk, 90 N.J. 550, 561 n.1 (1982).

The ALJ made credibility determinations to which we defer. "As a general rule, the reviewing court should give 'due regard to the opportunity of the one who heard the witnesses to judge of their credibility . . . and . . . [give] due regard also to the agency's expertise where such expertise is a pertinent factor.'" Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988) (alteration in original) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). There was nothing

11

improper about the fact-finder determining the credibility of the witnesses. In re Snellbaker, 414 N.J. Super. 26, 36 (App. Div. 2010).

The ALJ specifically found Ellison was credible, emphasizing his position as "president of the FOP . . . , [and as] a sworn law enforcement professional and an experienced criminal investigator." Even though Ellison testified Tonner made the statement about shooting Scott once, and in his written statement indicated Tonner said it twice, Ellison consistently said Tonner made the threat. The ALJ was also persuaded by Leonard's "very credible" testimony, because she was Tonner's friend and was not accused by him of bias. Leonard's statement that Tonner said he was not going to hurt "that man," and that he did not directly deny making a threat, corroborated Ellison's testimony that a threat had been made. There was nothing arbitrary and capricious about the Commission reviewing the record and adopting these findings.

Tonner argues the sixty working day suspension and demotion was not reasonably proportional to the offense. "[W]hen reviewing administrative sanctions, appellate courts should consider whether the 'punishment is so disproportionate to the offense, in light of all of the circumstances, as to be shocking to one's sense of fairness.'" Stallworth, 208 N.J. at 195 (quoting Carter, 191 N.J. at 484).

A corrections officer is a law-enforcement officer with full police powers, N.J.S.A. 2A:154-4. A law enforcement officer is held to a higher standard of conduct than other public employees and is expected to act in a reasonable manner. See In re Phillips, 117 N.J. 567, 576 (1990). Even were he not an officer, the threat to shoot another employee is a very serious matter, requiring prompt attention for the safety of the workplace. There was nothing disproportionate about the punishment that shocks our sense of fairness when compared to the offense, nor nothing arbitrary, capricious or unreasonable about the discipline imposed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION